[Crim. No. 4720. Second Dist., Div. Three. Oct. 16, 1952.]

THE PEOPLE, Respondent, v. LEON NELSON DODD, Appellant.

Edwin D. Jones, Jr., for Appellant.

Edmund G. Brown, Attorney General, for Respondent.

SHINN, P. J.—In a nonjury trial appellant Dodd was convicted of second degree burglary. He was charged with and admitted a prior conviction of a felony for which he served a term in prison. He appeals from the judgment and from an order denying his motion for a new trial.

Upon the request of appellant for appointment of counsel this court appointed Edwin D. Jones, Jr., a member of the voluntary committee of the Los Angeles Bar Association on Criminal Appeals, with a request that he make a full report to the court after a study of the record and file a brief on behalf of the appellant if he should entertain a doubt that appellant was given a fair trial or whether any arguable ground exists for reversal of the judgment. Such report has been received, with counsel's statement that in his opinion no such ground of appeal exists. The report is considered as a substitute for a brief and does not call for a reply. From our examination of the record we are in full agreement with the conclusion stated in the report of counsel.

We have examined the record and find that during the trial the court made no rulings upon the admission or exclusion of evidence which were adverse to the defendant. There remains for consideration only the question whether there was substantial evidence that the crime charged was committed by the defendant. One Gonderman was jointly accused of the burglary and his case has been handled in the juvenile court. He was a witness for the People and implicated Dodd in the burglary. The question of the sufficiency of the evidence relates to that which tended to corroborate the testimony of the accomplice.

Gonderman testified that he had known defendant Dodd for 12 years; in May, 1951, he and defendant, looking for work on tunnel construction, drove in defendant's car from Los Angeles to Santa Barbara and thence to San Marcos Pass in the same area; they slept for two nights by the side of the road in the San Marcos Pass; they stopped at the Cold Springs Tavern and were directed to Paradise Camp where cabins were available; they discussed going to Paradise Camp to get

blankets and whatever else could be found from an empty cabin in order to improve their roadside sleeping conditions; they found a relatively isolated cabin and defendant taped a window and broke it with his fist; defendant stood on a small stand below the window and after picking out the remaining pieces of glass, broke the inside screen and took it out; Gonderman then boosted the defendant through the opening and followed him; it was about 10 o'clock p. m. and there were no lights in the cabin; defendant and Gonderman used small wooden matches to see their way around; in the bedroom which they entered they picked up a stack of blankets, went to the kitchen and got silverware, a hot plate, pots and pans, and, from the living room, two large cushions. Defendant climbed back out the window and Gonderman handed the various articles to him; when the deputy sheriff arrested defendant on the morning of May 17th Gonderman was seated in defendant's car; at the time there were no keys in the car.

William Parker, a retired building contractor residing in Santa Barbara, testified that he owned a cabin in Los Prietos (in Santa Barbara County) which he and his family used for occasional weekend visits; the cabin was kept furnished and stocked with all the necessary utensils, bedding and appliances for purposes of use on short notice; at no time had Mr. Parker given defendant Dodd or his companion Gonderman permission to enter the cabin; on Saturday, May 26, 1952, Parker drove to the cabin, went in the front door and saw small burnt matches all over the floor and the bedroom window broken; missing were blankets, large couch pads, silverware, pots and pans and an electric hot plate; the window had been taped with masking tape, then broken and the broken part placed on the ground; the window was about 6 feet above the surface of the ground; later, in the Santa Barbara County courthouse, Parker identified a group of articles which had been taken from defendant's car by the officers; in support of his identification he testified that he had previously repaired one element of the hot plate and thus was able to identify it. He also testified that he had personally made the couch pads.

Clayton Cornish testified that he was a deputy sheriff; that in company with Deputy Sheriff Harry Looney he arrested defendant on the morning of May 17th at the mouth of the Tecolote Tunnel. Cornish took defendant to the latter's 1937 car which was parked close by and found Gonderman seated in the car; there were no keys inside the car. In the back seat of the car there were blankets, quilts, sheets, cushions and also

a roll of white masking tape similar to that which had been used to break open the cabin window. Cornish took Gonderman in his car and Looney went with the defendant; they drove to defendant's camp by the roadside about a mile and a half away and there found some cooking utensils and an electric hot plate. Cornish in his car then followed the defendant to Santa Barbara. When Cornish questioned defendant on May 27th defendant said he had brought a hot plate and silverware from Los Angeles.

Harry Looney testified that he was one of the arresting officers and rode with defendant in defendant's car to Santa Barbara; when defendant came out of the tunnel and was taken to his car he took the keys to the car out of his pocket; during the drive to Santa Barbara a conversation took place in which defendant said all the articles in the car had been brought from Los Angeles; only one hot plate was found. The foregoing constituted the direct evidence of the People.

Defendant testified that he and Gonderman arrived at the Cold Springs Tavern about 8:30 p. m. on May 16, 1951, and talked about getting a job; they got in defendant's car and drove down to the lower part of the Cachuma Dam; at that point Dodd left the car and went to a little building and asked a man about work; he was referred up to the tunnel; when he got back to where the car had been parked the car and Gonderman were gone; Dodd walked 3 miles up to the tunnel entrance arriving about 11 o'clock p. m.; he there talked about work to Robert Ellison who was in charge of the shift; after talking to Ellison, Dodd noticed his car nearby and Gonderman sitting in it; he asked Gonderman where he had been and then saw that there were quilts and other supplies in the back seat of the car; he told Gonderman to take them back where he had got them, which Gonderman said he would do; Dodd sat down and read a paper for a few minutes, then went outside, saw his car and Gonderman again and was told by Gonderman that he had returned the stolen articles. Defendant testified that he knew Eugene Edwards, later called as a witness, having met him previously in Los Angeles.

Robert Ellison testified for defendant that he was a shift chief on the Tecolote Tunnel job on May 16, 1951; Dodd had previously worked for him in 1947 on a Feather River Canyon job; Dodd came to him shortly after 11 o'clock p. m. on May 16th and asked him for work; he did not know Gonderman at all; he had no knowledge of Dodd's whereabouts prior to 11 o'clock p. m. that evening.

Eugene Edwards was called by the defendant. He testified that he first met Dodd in the Santa Barbara County Jail and did not remember having met him previously in Los Angeles; that he did not know Carl Gonderman. He testified that he had told defendant's attorney that he had previously met Dodd in Los Angeles and that he had seen Gonderman before but that these statements were untrue; that in the jail Dodd has asked him to make these statements to his (Dodd's) attorney and also to tell him that he had seen Gonderman in Dodd's car in Santa Barbara on the night of the 16th of May. He insisted that the statements made to defendant's attorney were untrue and that he was testifying to the truth. He also testified that his conversations at the jail with Dodd were in the presence of two other persons, one named Pascual and the other called Wimpy.

Frederick A. Van Order was called by the defendant. He testified that he had been in the same cell with Dodd for two days and that Edwards had been in the same tank but not the same cell and that he had heard no conversation between Dodd and Edwards concerning Dodd's case.

Richard H. Byrd, called by the defendant, testified to the same general effect as Edwards. He was questioned whether Dodd had talked to him about his case and stated he would not care to make any comment about that as it could implicate Dodd.

Pascual Bustos was called by defendant and testified that he knew nothing of any conversation between Dodd and Edwards.

After Edwards and the other witnesses had testified, Dodd did not take the stand or deny that he had coached Edwards to tell his (Dodd's) attorney that he had known Gonderman and had seen him alone in Dodd's car.

There was abundant evidence to corroborate the testimony of Gonderman that he and Dodd together had committed the burglary. ██ It is well settled that corroborating evidence is sufficient if it tends to connect the defendant with the commission of the crime and that the relationship of the defendant and the accomplice and all their acts and conduct may be considered in determining whether there are corroborating circumstances. (*People* v. *Henderson*, 34 Cal.2d 340 [209 P.2d 785].) ██ The defendant's statements and admissions, made in connection with his testimony, may afford corroboratory proof sufficient to sustain a verdict. ██ False or conflicting statements as to material facts may constitute corroborative evidence. (*People* v. *Sullivan*, 144 Cal. 471 [77

P. 1000].) The following evidence tended strongly to corroborate testimony of Gonderman; defendant and Gonderman had a common need for bedding and cooking utensils with which to equip their roadside camp; a part of the stolen articles were found in defendant's car and the remainder at the camp; defendant and Gonderman were together both before and after the burglary and defendant knew that the articles which were in his car had been stolen; the fact that he had the keys to the car was in direct contradiction of his testimony that Gonderman had used the car without his consent; his statements, testified to by the officers, that he had brought the stolen articles from Los Angeles were contrary to his testimony at the trial. The testimony of the witness Edwards, if believed by the court, proved that defendant had a consciousness of guilt and was endeavoring to fabricate a defense by the use of false testimony. It cannot reasonably be contended that the testimony was legally insufficient to establish defendant's guilt.

The judgment and order denying motion for a new trial are affirmed.

Wood (Parker), J., and Vallée, J., concurred.