[Crim. No. 4873. Second Dist., Div. Three. Oct. 31, 1952.]

THE PEOPLE, Respondent, v. ROBERT E. LANG, Appellant.

Warren White for Appellant.

Edmund G. Brown, Attorney General, for Respondent.

SHINN, P. J.—Appellant was convicted in a jury trial of robbery in the second degree and attempted robbery. Upon trial of his plea of not guilty by reason of insanity to a jury he was found sane. He was also found to have suffered a prior conviction for which he had served a term in prison. He made a motion for a new trial, which was denied and he appeals from the judgment and order.

Upon application of appellant this court appointed Warren White, Esq., member of the Los Angeles Bar Association Committee on Criminal Appeals, to represent appellant and to report to the court whether, in his opinion, the record discloses any meritorious ground of appeal (see *People* v. *Dodd* (October 16, 1952), 113 Cal.App.2d 682 [248 P.2d 965]). A report has been received which summarizes the case on appeal and expresses counsel's opinion that no meritorious ground of appeal exists. From our independent study of the record the following facts appear: Defendant was accused of robbing Geraldine R. Dugan, a Western Union clerk, of $29. The robbery took place in the office of the company at about 3 o'clock p.m.; defendant had his right hand in his

coat pocket and said: ''This is a stick-up,'' and demanded money, which was given to him; Mrs. Dugan later identified the defendant in a lineup of prisoners at the county jail three or four days after the robbery. Upon cross-examination she testified at length as to the characteristics of defendant which enabled her to identify him. There was no uncertainty in her identification. Raymond A. Neville, a night clerk at the Embassy Hotel, in Los Angeles, testified that at about 1 o'clock a.m. the defendant appeared at the office of the hotel, put his hand in his right hand pocket and said: ''This is a stick-up. Give me your money.'' Neville picked up a metal stapling machine, pointed it at the defendant and said: ''You beat it or I will blow your brains out,'' whereupon defendant ran out and Neville followed him. About 10 minutes later defendant was arrested, brought back to the hotel and was identified by Neville. There was no uncertainty in Neville's identification. Defendant was arrested three or four blocks from the Embassy Hotel. One of the arresting officers testified that defendant said he did not use a gun, but that he put his wallet in his right front coat pocket and made it simulate a gun. Defendant had a wallet in his right coat pocket. Defendant testified that he had no clear recollection of what he had been doing when the Western Union office was robbed, although he denied having been in that office. He admitted having been at the Embassy Hotel, claimed that he had taken two drinks in the lobby of the hotel, and that he ''came to'' several blocks away in a filling station, where he was arrested. He admitted having run away from the hotel when the clerk came toward him with what he thought was a gun. He testified that he was employed at that time as a mixer of paint and lacquer and was not in need of money. The evidence was legally sufficient to justify the verdicts of guilty.

There were no errors in the receipt or exclusion of evidence. When the case was called for trial defendant had no attorney, the court appointed an experienced member of the bar to represent him and granted a continuance of several weeks to enable the attorney to familiarize himself with the case. Later, when the case was again called for trial, defendant discharged his attorney and insisted upon representing himself. The trial judge exhibited the utmost solicitude for the rights of defendant and upon innumerable occasions assisted him in the conduct of his defense. Defendant was repeatedly told that he should have an attorney but was determined to represent himself. He was allowed wide latitude in giving his testimony

and in cross-examining witnesses. His trial was eminently fair in every respect.

■ Pursuant to section 1027 of the Penal Code the court appointed three physicians to examine the defendant as to his sanity, and report to the court as to his mental condition. At that time defendant was represented by an attorney. It was stipulated that if two of the doctors examined the defendant the third need not examine him. Dr. Edwin E. McNiel testified in the trial of the plea of insanity he had examined defendant and that in his opinion defendant was legally sane when the offenses were committed and at the time of his examination. The written report of Dr. Clarence W. Olson was introduced in evidence under stipulation. In a comprehensive report Dr. Olson gave as his opinion that defendant was sane at the time of the commission of the offense and at the time of trial. Other than the testimony of Dr. McNiel and the report of Dr. Olson, there was no evidence on the insanity issue except the testimony of the defendant. There was ample evidence to support the findings of the jury that defendant was sane.

■ Defendant made a motion in the trial court for the inclusion of the record of other proceedings in the transcript on appeal. It appears from the record that he desired to have included discussions which took place at the time of his arraignment and in connection with all proceedings preliminary to the trial upon the pleas of not guilty and not guilty by reason of insanity, as well as the *voir dire* examination of the jurors and the oral arguments to the jury. There was no showing whatever of the materiality of any of the matters sought to be incorporated in the record. The court denied the motion and in doing so committed no abuse of discretion.

Defendant was given an eminently fair trial. His rights were fully protected and his appeal is without merit.

The judgment and order are affirmed.

Wood (Parker), J., and Vallée, J., concurred.