67 Cal.2d 105 (1967)
THE PEOPLE, Plaintiff and Respondent,
v.
HAROLD ARTHUR HILL, Defendant and Appellant.
Crim. No. 10808. 
Supreme Court of California. In Bank. 
July 25, 1967.
 Harold Arthur Hill, in pro. per., and Kate Whyner, under appointment by the Supreme Court, for Defendant and Appellant.
 Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bruce Wm. Dodds, Deputy Attorney General, for Plaintiff and Respondent.
 PETERS, J.
 Defendant was adjudged guilty of second degree burglary after a trial by jury. He was also found to have been previously convicted, in 1958, of two felonies--burglary and assault with force likely to produce great bodily injury--and was found to have served a term in the state prison for each. Defendant appeals from the judgment of conviction.
 Defendant, represented by Deputy Public Defender Gordon, entered a plea of not guilty to the burglary charge and denied the prior convictions. The cause was called for trial October 1, 1965, and the panel of prospective jurors was sworn. Defendant then interrupted the proceedings by announcing that he wished to have first a separate trial on the issue of his prior convictions. His attorney attempted to explain that in determining his guilt or innocence of the most recent charge, the jury would not be permitted to consider the prior convictions. Defendant's replies to Gordon were an incoherent jumble of dates, pleas, and priors. He seemed unable to understand that the recent burglary alleged in the information was the primary charge against him and that the priors would only affect the punishment. Defense counsel then stated to the court that defendant appeared to be incapable of cooperating with counsel in his defense--that a doubt existed as to his present sanity. He moved "that this matter be referred to Dept. 95 [psychiatric department of the Superior Court of Los Angeles County] under the provisions of Penal Code Section 1368." [fn. 1] This motion was granted, Judge Olson announcing *112 that he had a doubt of defendant's present sanity. A mistrial was declared under the option given the court in section 1368 to discharge or retain the jury.
 Thereafter two physicians, Drs. Tweed and Davis, were appointed to examine defendant. On October 6 they submitted their reports on printed forms designed for use in 1368 matters.printed on the sheet is the following question: "Is the person named in this report sane in that he/she is presently able to understand the nature and the purpose of the proceedings against him/her and to conduct or assist in his/her defense in a rational manner?" Both physicians placed a check mark in the "Yes" square following the question. They also commented on defendant's mental condition. Dr. Davis found defendant "correctly oriented" and found no hallucinations. Although defendant had accused defense counsel of plotting against him, in Dr. Davis' opinion this was "not clearly delusional." Dr. Davis concluded that defendant was "not mentally ill." Dr. Tweed reported "no evidence of psychosis or mental illness as would be manifested by hallucinations or delusions."
 The sanity hearing provided for by section 1368 was conducted in Department 95 on October 13, 1965. Defendant was represented by Deputy Public Defender Moss, who submitted the matter to the court on the basis of the two physicians' reports. Although Drs. Tweed and Davis were present, counsel did not seek to cross-examine them. The court found defendant sane within the meaning of section 1368 and referred the matter back to the department where the guilt trial was pending.
 On January 10, 1966, the guilt trial was held, this time before Judge Farley. Samuel Zablan, owner of Alan Men's Shop in Los Angeles, testified that sometime after he had locked up the store on the night of July 8, 1965, it had been broken into by smashing in the plate glass in the front door. Seventeen suits and two pairs of pants, all bearing the label, "Alan," were missing.
 Police Officer Wayne Songer of the Los Angeles Police Department testified that at 4:10 a.m. on July 9, while he was off duty, he heard the sounds of breaking glass and of a *113 burglar alarm. At that time he was at a taco stand directly across the street from Alan Men's Shop. Songer observed defendant, carrying several suits on hangers, run out of the shop and around the corner. Songer pursued him on foot some 50 yards when defendant reached a Cadillac automobile, opened the trunk, threw in the suits, and drove off. Songer ran back to his own car and gave chase, overtaking defendant's automobile when the latter stopped at a red light. Suits were found in the trunk of the car, and they were the ones stolen from Alan Men's Shop.
 As proof of the prior convictions the People placed in evidence certified copies of minute orders of the Superior Court of Los Angeles County, dated July 10, 1958, stating that Harold A. Hill had been found guilty of burglary and of assault by means of force likely to produce great bodily injury. The orders state that Hill was sentenced to state prison for both crimes. Accompanying the orders was a card with fingerprints of Hill and a photograph of him.
 The defense presented no evidence and called no witnesses.
 The Proceedings to Determine Present Sanity
 Defendant contends that in the 1368 proceedings it was error (1) not to try that issue before the same judge who had declared the doubt as to his sanity; (2) for the court not to advise him that in that proceeding he had a right to a jury trial; and (3) that the court's finding of present sanity is unsupported. These contentions lack merit.
 [1] Section 1368 does not require the present sanity hearing to be held before the same judge that declared the existence of a doubt as to the accused's competence to stand trial. The section states that the sanity issue should be determined by "the court," unless a jury is demanded. [fn. 2] There is only one superior "court" in Los Angeles County (Cal. Const., art. VI, 4; White v. Superior Court, 110 Cal. 60, 67 [42 P. *114 480]; Brown v. Campbell, 110 Cal. 644, 648 [43 P. 12]; Tubby v. Tubby, 202 Cal. 272, 276 [260 P. 294]), and defendant's present sanity hearing was held in this "court."
 The Rules of the Superior Court of Los Angeles County (1967) provide that all "Hearings on questions of sanity under Section 1368 ... of the Penal Code" be assigned to Department 95, the psychiatric department. (Rule 4, 12, subd. (c).) We have previously given approval to the transfer of section 1368 matters to the psychiatric department of the Superior Court of Los Angeles County. (People v. Westbrook, 62 Cal.2d 197, 204 [41 Cal.Rptr. 809, 397 P.2d 545]; see also In re Hedberg, 232 Cal.App.2d 728, 731 [43 Cal.Rptr. 193].)
 [2] Defendant urges that he was entitled to a jury trial on the issue of his present sanity, and that such right was not waived by him. In the first place a 1368 hearing is not within the scope of article I, section 7, of the California Constitution, precluding a waiver "in criminal cases" unless the defendant and his attorney concur. A 1368 hearing is a special proceeding. [fn. 3] [3] The only right to a jury trial in a special proceeding collateral to the criminal trial is that provided by statute. But defendant contends that since he was entitled to a jury trial, upon demand, the judge should have advised him of that right. Section 1368 imposes no such duty on the judge. The defendant was represented by counsel. Unless the statute expressly so directs, there is no duty in a judge to advise a defendant of his statutory rights where he is represented by counsel.
 [4] Except where representation by counsel is so ineffective that it can be described as a "farce or a sham" (People v. Ibarra, 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]; People v. Wein, 50 Cal.2d 383, 410 [326 P.2d 457]; People v. Gutkowsky, 219 Cal.App.2d 223, 227 [33 Cal.Rptr. 79]), an attorney may ordinarily waive his client's rights (Henry v. Mississippi, 379 U.S. 443, 451 [13 L.Ed.2d 408, 85 S.Ct. 564]) as to matters of trial tactics and " 'control the court proceedings' " (People v. Merkouris, 46 Cal.2d 540, 554 [297 P.2d 999]; People v. Bourland, 247 Cal.App.2d 76, 83 [55 *115 Cal.Rptr. 357]). [5]). [5] [See fn. 4] Ordinarily, counsel need not inform his client of a particular right prior to waiving it for him. (See People v. Kramer, 227 Cal.App.2d 199, 201 [38 Cal.Rptr. 487].) [fn. 4]
 [6] Although counsel at the present sanity hearing called no witnesses, presented no evidence, did not seek to cross-examine Drs. Tweed and Davis, and apparently did not inform defendant of his right to demand a jury trial, we cannot hold that such representation was a farce or a sham under the particular circumstances.
 The strongly worded reports of Drs. Davis and Tweed apprised defense counsel that the deputy public defender's own doubts about Hill's mental competence were not borne out by any medical facts. [fn. 5] There just was no substantial evidence upon which defendant's counsel could have argued that his client was insane. It was, therefore, not improper for defense counsel not to contest the sanity issue.
 Defendant's contention that there was insufficient evidence to support the finding in Department 95 that he was mentally competent to stand trial rests solely on Dusky v. United States, 362 U.S. 402 [4 L.Ed.2d 824, 80 S.Ct. 788] (per curiam). But Dusky is readily distinguishable. It concerned only implementation of the federal statute providing for present sanity hearings (18 U.S.C.A. 4244). [7, 8] Furthermore, there was more specific evidence of mental competence presented to the court in the instant case than in Dusky. [fn. 6] We *116 hold that the reports of Drs. Davis and Tweed were clearly sufficient evidence of sanity to resolve the doubt expressed by the guilt trial judge.
 [9] We have laid down no specific rules to control hearings conducted under section 1368 but have instead imposed the requirement that the accused be afforded "all of the elements of due process." (People v. Westbrook, supra, 62 Cal.2d 197, 204, followed in In re Hedberg, supra, 232 Cal.App.2d 728, 731.) This requirement was met in the instant case where the indigent defendant was provided with two psychiatric examinations, counsel to represent him at the special hearing, and the opportunity to present evidence. There is nothing in the record to indicate that a jury trial would not have been provided upon demand as expressly required by section 1368. [fn. 7]
 [10] Defendant also contends that Judge Farley should have declared a doubt as to defendant's sanity when criminal proceedings were resumed after the hearing in Department 95. The contention is totally without merit. Judge Olson's previously expressed doubt had just been resolved in Department *117 95 by a finding that defendant was competent to stand trial. No new evidence of insanity was presented to Judge Farley, let alone the substantial evidence of incompetence that must appear in the record before the court's failure to order a sanity hearing may be urged as error. (People v. Pennington, supra, 66 Cal.2d 508, 519.)
 Instructions to the Jury
 Defendant contends that the court erred in instructing the jury on both general and specific intent in regard to the crime of burglary (Pen. Code, 459). [fn. 8] It has frequently been held to be error to instruct the jury on general intent in a case where the crime charged requires a specific intent. (People v. Snyder, 15 Cal.2d 706, 709-710 [104 P.2d 639] [attempted murder]; People v. Manfredo, 210 Cal.App.2d 474, 481 [26 Cal.Rptr. 817] [burglary]; People v. Butcher, 174 Cal.App.2d 722, 730-732 [345 P.2d 127] [burglary]; People v. Bernhardt, 222 Cal.App.2d 567, 587 [35 Cal.Rptr. 401] [conspiracy to practice medicine without a license]; People v. Hewitt, 198 Cal.App.2d 247, 251-252 [18 Cal.Rptr. 5] [drawing check on insufficient funds with intent to defraud]; People v. Johnson, 191 Cal.App.2d 694, 702 [13 Cal.Rptr. 1] [automobile theft]; People v. Warren, 175 Cal.App.2d 233, 239 [346 P.2d 64] [automobile theft]; People v. Barkoff, 163 Cal.App.2d 639, 648-649 [329 P.2d 1005] [abortion]; People v. Booth, 111 Cal.App.2d 106, 108-109 [243 P.2d 872] [lewd acts with children].)
 The reason for this rule is that when the jury, as in the instant case, hears a generalized instruction on both general *118 and specific intent it may be confused. (People v. Booth, supra, 111 Cal.App.2d 106, 108-109.) [11a] The general intent instruction here told the jury that "the intent to do the forbidden thing constitutes the criminal intent." When the jury then heard the specific intent instruction they might well have believed that they should automatically infer specific intent from the voluntary doing of the act. Whether to draw such an inference is, of course, for the jury itself to decide from the totality of circumstances disclosed by the evidence. Instructions which mislead the jury into believing that specific intent is automatically to be inferred from the intentional doing of the proscribed acts are erroneous. (People v. Snyder, supra, 15 Cal.2d 706.)
 As a matter of law in the abstract, it is true, of course, that no specific intent crime can be committed without general intent, that is, without the defendant having voluntarily done the proscribed acts, as, in burglary, entry into a building or structure. (Pen. Code, 20; cf. People v. Dillon, 199 Cal. 1, 7 [248 P. 230]; People v. Harris, 29 Cal. 678, 681.) Accordingly, this court has previously stated that it is permissible to instruct the jury on general intent in such cases if that instruction is clearly qualified by a specific intent instruction which leaves no doubt in the jury's mind that specific intent is not to be automatically inferred from the doing of the physical acts involved in the crime. (People v. Chessman, 38 Cal.2d 166, 183 [238 P.2d 1001]; People v. Zerillo, 36 Cal.2d 222, 232 [223 P.2d 223]; People v. Snyder, supra, 15 Cal.2d 706, 709-710; People v. Richardson, 161 Cal. 552, 564-565 [120 P. 20].)
 [12] In cases where a specific intent crime alone is charged, the general intent instruction should only be given where some evidence suggests that defendant's acts may not have been voluntary or intentional, or where defendant raises the issue or requests a general intent instruction. (People v. Booth, supra, 111 Cal.App.2d 106, 108-109.) [13] And when both instructions must be given, the court should take care to clearly explain to the jury that the specific intent is not to be automatically inferred from the defendant's voluntarily doing the proscribed acts but is a question of fact for the jury to be determined from all the evidence before it, including those reasonable inferences the jury wishes to draw.
 In cases where the defendant is tried simultaneously for multiple crimes, some requiring specific intent, others only general intent, the court should limit the application of the *119 general intent instruction to those crimes not requiring specific intent, unless general intent becomes a contested issue in proving specific intent crimes. (People v. Butcher, supra, 174 Cal.App.2d 722, 731; People v. Booth, supra, 111 Cal.App.2d 106, 108.)
 [11b] In the instant case there was no need to give a general intent instruction, and the instruction read to the jury was not clearly qualified by the subsequently given instruction on specific intent. Therefore, the giving of it was error, but under the circumstances that error could not have been prejudicial. [14] No miscarriage of justice (Cal. Const., art. VI, 13) results where the jury could not have been misled by an unnecessary instruction on general intent (People v. Smith, 223 Cal.App.2d 225, 233 [35 Cal.Rptr. 719]); nor is the error prejudicial where the nature of the acts done by the accused preclude belief that they were done without specific intent (People v. Booth, supra, 111 Cal.App.2d 106, 109). [15] In the instant case if the jury believed Officer Songer's testimony--as it must have done to return a verdict of guilty--the inference that defendant had the required specific intent to commit a felony in Alan Men's Shop was irresistible. It is not probable that a result more favorable to defendant would have been reached had the general intent instruction not been given. (People v. Watson, 46 Cal.2d 818, 836 [299 P.2d 243]; People v. Johnson, supra, 191 Cal.App.2d 694, 702.)
 [16, 17] Defendant also argues that the court erred in failing to instruct the jury that the specific intent to commit a felony had to be formed before or at the moment defendant entered the building. (Pen. Code, 20, 459; see People v. Devlin, 143 Cal. 128, 129 [76 P. 900]; People v. Collins, 53 Cal. 185; People v. Novo, 12 Cal.App.2d 525, 528 [25 P.2d 915]; 1 Witkin, Cal. Crimes (1963) 458, p. 420.) While we agree with defendant that burglary cannot be committed unless the specific intent exists at the time of entry and that the jury should be so instructed, any failure to so instruct the jury could not have constituted prejudicial error in this case. Again, the inference appears irresistible that defendant had the specific intent to commit theft during the moment in which he broke into Alan Men's Shop. It is inconceivable that the failure to clearly instruct the jury on the time of intent could have affected their verdict.
 Defendant further contends that the court erroneously instructed *120 the jury on flight from the scene of a crime. [fn. 9] Section 1127c of the Penal Code provides: "In any criminal trial or proceeding where evidence of flight of a defendant is relied upon as tending to show guilt, the court shall instruct the jury substantially as follows:"
 "The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine."
 "No further instruction on the subject of flight need be given."
 [18] As the statute indicates, and as the cases have held (e.g., People v. Chessman, supra, 38 Cal.2d 166, 184; People v. Israel, 91 Cal.App.2d 773, 783-784 [206 P.2d 62]), the giving of an instruction on flight in language which varies slightly from that of section 1127c is not error. [19] Defendant contends that to invite the jury to consider flight as showing consciousness of guilt is a substantial variation from the statute; that is, he argues, the jury under section 1127c is simply to be informed it can consider flight in determining guilt and should not be told in what manner to weigh the evidence of flight.
 We disagree. It is settled law that the reason flight is relevant is because it may demonstrate consciousness of guilt. (E.g., People v. Ruiz, 103 Cal.App.2d 146, 149 [229 P.2d 73]; People v. Kittrelle, 102 Cal.App.2d 149, 158 [227 P.2d 38]; People v. Moody, 93 Cal.App.2d 66, 71 [208 P.2d 692].) Evidence of flight has no other probative value. Certainly, then, it is not improper to inform the jury of the reason why it is asked to consider defendant's flight as a factor that might tend to indicate his guilt of the crime charged.
 [20] The Legislature's purpose in enacting section 1127c was to abolish the rule stated in many early cases that the jury could not be instructed to consider flight as evidence of guilt unless it had been proved that the fleeing suspect had *121 previously learned that he was accused of commission of a particular crime. (See Deering's Pen. Code Ann., 1127c, annotator's note No. 1 (1960); cf. People v. Watts, 198 Cal. 776, 797 [247 P. 884]; People v. Sainz, 162 Cal. 242, 246 [121 P. 922]; People v. Jones, 160 Cal. 358, 369 [117 P. 176].)
 Proof of Prior Convictions
 Defendant contends that there was insufficient proof to support that portion of the judgment finding (1) that he had previously been convicted of the two felonies and (2) that he had served time in prison for each of them.
 [21] When a judgment is attacked for insufficiency of the evidence, an appellate court must draw all reasonable inferences which would support the judgment. (People v. Newland, 15 Cal.2d 678, 681 [104 P.2d 778].) Certainly it can be inferred from the minute order of the Superior Court of Los Angeles County which was put in evidence that judgment of conviction of the crimes indicated was duly entered. As regards the identity of defendant with the Harold A. Hill referred to in the minute order, the similarity of name and of fingerprints established a prima facie case. (People v. Manfredo, supra, 210 Cal.App.2d 474, 478-479; People v. Hoerler, 208 Cal.App.2d 402, 406 [25 Cal.Rptr. 209]; People v. Ahouse, 162 Cal.App.2d 586, 588 [328 P.2d 227]; People v. Shayer, 135 Cal.App. 755, 760 [28 P.2d 48].)
 [22, 23] Defendant cannot presently be prejudiced by that portion of the judgment stating he served prison terms for each of the priors. The finding of prior convictions will affect his parole status and minimum sentence whether or not he served time in prison for them. (Pen. Code, 3024, subd. (c).) Whether a defendant has served time in prison for his prior convictions is relevant only in adjudging him an habitual criminal. (Pen. Code, 644.) Defendant was not adjudged an habitual criminal in the instant case and could not have been, since the burglary committed by him was found to be burglary in the second degree, which is not one of the crimes enumerated in section 644 of the Penal Code. Nevertheless, since it is possible that the judgment here might at some future date be used against defendant in an habitual criminality proceeding to prove that he served time in prison for a prior conviction, [fn. 10] the claim of insufficiency of evidence to *122 support the finding that he served time in prison can be raised on this appeal.
 [24] Section 969b of the Penal Code provides that a prima facie case of imprisonment for prior convictions is made by introducing in evidence various certified records of the prison. Defendant contends that the statute evinces a legislative policy that a lesser showing is not a prima facie case and that consequently the People failed to prove his previous imprisonment beyond a reasonable doubt (People v. Collins, supra, 228 Cal.App.2d 460, 464). The People did not avail themselves of section 969b, but that statute "is permissive and not mandatory. ... [I]t does not restrict the People from using other forms of proof ..." to establish the fact of previous imprisonment. (People v. Williams, 223 Cal.App.2d 676, 679 [35 Cal.Rptr. 805].) [25] We are of the opinion that the fact of prior imprisonment could reasonably be inferred from the order of the superior court sentencing Harold A. Hill to state prison. In People v. Nicholson, 34 Cal.App.2d 327, 332-333 [93 P.2d 223], it was held that an admission by a defendant that he had suffered prior convictions was not sufficient evidence for a finding that he served prison terms for the convictions. The case is distinguishable from the situation presented on this appeal. When an accused merely admits a conviction, no evidence has been presented from which it can be inferred that the defendant was not granted probation. But that inference can and must be made in the instant case because the minute order placed in evidence stated that Harold A. Hill was sentenced to prison for the term prescribed by law. Such language would not be employed if probation had been granted.
 Record on Appeal
 [26] Defendant contends that failure to provide to him, an indigent, at no cost, a transcript of the arguments of the attorneys to the jury constitutes a denial of equal protection of the law. (U.S. Const., Amend. XIV.) More than two months after filing his notice of appeal, defendant petitioned the trial court to include in the record on appeal the transcript of argument. The motion was granted by Judge Farley, but his order was vacated nunc pro tunc five days later by Judge Leader, on the court's own motion.
 Defendant does not attack the procedure by which Judge *123 Farley's order was vacated. And even if the nunc pro tunc order was improper, defendant would be limited to his constitutional argument. The remedy of moving the appellate court to augment the record (rule 12, Cal. Rules of Court) has been available to defendant but he has not sought to invoke it. His position is that he is entitled to a free transcript of argument without demonstrating the materiality of the argument to points he will raise on appeal, a prerequisite both to obtaining that transcript in the trial court (rule 33(b), Cal. Rules of Court) [fn. 11] or to augmentation at the appellate level (People v. Hagan, supra, 203 Cal.App.2d 34, 39).
 Defendant contends that the equal protection clause entitles an indigent appellant to a transcript of all criminal proceedings in his case as a matter of right whether or not he demonstrates need for the entire record. He relies on Hardy v. United States, 375 U.S. 277 [11 L.Ed.2d 331, 84 S.Ct. 424]. Hardy holds that federal statutes assure the indigent appellant, on appeal from a judgment of a federal court, a free transcript of the entire proceedings when his appellate counsel is not the same attorney who represented him at trial. (Cf. United States v. Sigal (3d Cir.) 341 F.2d 837, 839; United States v. Shoaf (4th Cir.) 341 F.2d 832, 833-835.) The Hardy decision has no application to constitutional standards which apply to the states. The Supreme Court specifically stated at pages 278 and 282 of its opinion that it was dealing only with federal statutory law. (See also United States v. Shoaf, supra, 341 F.2d 832, 834.) In respect to the standards applicable to the states, the Supreme Court has given its approval to a state *124 procedure which requires the indigent appellant to demonstrate that a transcript is " 'necessary to present fully the errors recited in the application' " for the record before he will be given a free transcript. (Burns v. Ohio, 360 U.S. 252, 258, fn. 11 [3 L.Ed.2d 1209, 1213, 79 S.Ct. 1164] [Illinois law].)
 The recent United States Supreme Court decision of Entsminger v. Iowa, 386 U.S. 748 [18 L.Ed.2d 501, 87 S.Ct. 1402], does not cast doubt on the constitutionality of California's procedure in respect to providing transcripts to indigent defendants on appeal. Entsminger holds that an appeal on a clerk's transcript alone is insufficient. It would require a state to furnish a complete transcript on proper demand. But Entsminger does not hold that the state cannot, having automatically supplied a transcript of the evidentiary trial, require an indigent appellant to explain why he wishes a transcript of argument to the jury. The Entsminger opinion cites and relies on Burns v. Ohio, supra, 360 U.S. 252, for the rule that a state must give an indigent appellant as complete an appellate review as others may obtain. There is no intimation whatsoever that Burns is being overruled insofar as it approves of a system in which the state requires an appellant to demonstrate the materiality of the record he requests to issues raised on appeal.
 [27] Although under California procedure some discrimination between indigent and nonindigent defendants does exist, we are of the view that it does not deny equal protection of the law. (Cf. People v. Chavez, 243 Cal.App.2d 761, 767 [52 Cal.Rptr. 633].) While it is true that a nonindigent may purchase a complete transcript without giving reasons therefor, and while the indigent must give reasons, this discrimination is not invidious, because the indigent will be furnished all materials necessary for "adequate consideration of the errors assigned." (Draper v. Washington, 372 U.S. 487, 497 [9 L.Ed.2d 899, 83 S.Ct. 774]; see also Eskridge v. Washington State Board of Prison Terms & Paroles, 357 U.S. 214 [2 L.Ed.2d 1269, 78 S.Ct. 1061].) The appellant was present at his trial and should have some idea of what particular aspect of argument to the jury offended his sense of justice. (People v. Hagan, supra, 203 Cal.App.2d 34, 39.) All that is required of him is that he signify with some certainty how materials not included in the normal transcript may be useful to him on appeal. His appellate counsel may also be able to ascertain the materiality of these extra materials by discussing the case *125 with trial counsel and with defendant, and by examining the documents and materials that are furnished as part of the normal transcript. (Compare Hardy v. United States, supra, 375 U.S. 277, 280-281, fn. 3, discussing the problems facing appellate counsel when he has no transcript at all to guide him in ascertaining the errors which may be urged in order to show the materiality of a transcript to errors urged on appeal.)
 Sentencing
 [28] Defendant complains because the court, in sentencing him, failed to include in the judgment the direction that the sentence for the burglary conviction be served concurrently with sentences he was serving at the time the crime was committed. The court had stated that sentence would be concurrently served. Since the judgment is silent on the matter, the law presumes concurrent sentencing, and thus defendant has not been prejudiced. (Pen. Code, 669; People v. Chung, 207 Cal.App.2d 660, 661 [24 Cal.Rptr. 637]; In re Sweet, 113 Cal.App.2d 413, 415 [248 P.2d 94].)
 [29] Defendant also complains because the court failed to direct the Adult Authority to count the time served in county jail after his arrest on the burglary charge here on appeal as time served under the previous sentence, from which he was on parole at the time of his arrest. However, the matter of the Adult Authority's treatment of defendant under a prior sentence was not before the trial court and is not an issue on appeal. Defendant is, as he contends, entitled to credit for the time served in jail (Aguilera v. California Dept. of Corrections, 247 Cal.App.2d 150 [55 Cal.Rptr. 292]), and it must be assumed that the Adult Authority will correctly follow the law.
 There being no prejudicial error, the judgment is affirmed.
 Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.
 When evidence indicates that the defendant may be insane it should be assumed that he is unable to act in his own best interests. In such circumstances counsel must be free to act even contrary to the express desires of his client. (Cf. People v. Gutkowsky, supra, 219 Cal.App.2d 223, 226.) Conducting the trial according to the dictates of a defendant who, evidence indicates, may be insane, can result in prejudicial error. (People v. Merkouris, supra, 46 Cal.2d 540.)
 The facts in the Dusky case are discussed in Oliver, Judicial Hearings to Determine Mental Competency to Stand Trial, 39 F.R.D. 537 [address to the Ninth Circuit Sentencing Institute, 1965]. The strongest evidence of sanity in Dusky was a psychiatrist's finding that the accused was oriented as to time, place, and person. A second physician was of the opinion that the accused would be unable to assist in his defense. (39 F.R.D. at p. 542.) The Supreme Court held that, under federal law, at present sanity hearings the " 'test must be whether he [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him.' " (362 U.S. at p. 402 [4 L.Ed.2d at p. 824].) This is nearly identical to the test of sanity under section 1368 employed in this state. (People v. Pennington, supra, 66 Cal.2d 508, 516; People v. Brock, 57 Cal.2d 644, 648- 649 [21 Cal.Rptr. 560, 371 P.2d 296].) The printed question on the forms submitted by Drs. Davis and Tweed was directly responsive to this test of sanity. The physicians' "yes" answer to this question was specific proof of competence to stand trial that was wholly lacking in Dusky.
 "An essential element of the crime of which the defendant is accused is intent, the law requiring that to constitute such a crime there must exist a union or joint operation of criminal conduct and criminal intent. However, this does not mean that one must intend all the consequences of his conduct, or that he must know that such conduct is unlawful, to be guilty of a public offense such as that charged against the defendant in this case. The intent to do the forbidden thing constitutes the criminal intent. The law requires that to be guilty of crime, one must intend the conduct that fits the description of the crime and must engage in that conduct knowingly and wilfully."
 "In the case of certain crimes it is necessary that, in addition to the intended act which characterizes the offense, the act must be accompanied by a specific or particular intent without which such a crime may not be committed."
 "Thus in the crime of burglary, a necessary element is the existence in the mind of the perpetrator of the specific intent to commit grand theft, petty theft or any other felony; and, unless such intent so exists, that crime is not committed."
 Defendant's application to the trial court merely states that additional materials, including the transcript of argument, were "direly needed ... because of errors or mistakes. ..." No attempt having been made by defendant at any time to designate with even a modicum of specificity (cf. In re Swain, 34 Cal.2d 300, 304 [209 P.2d 793]) any errors which transcript of argument would help him prove, he is not entitled to the relief he seeks. (People v. Huber, 225 Cal.App.2d 536, 545-546 [37 Cal.Rptr. 512]; People v. Odegard, 203 Cal.App.2d 427, 433 [21 Cal.Rptr. 515]; People v. Hagan, 203 Cal.App.2d 34, 39 [21 Cal.Rptr. 116]; People v. Lang, 114 Cal.App.2d 14, 17 [249 P.2d 343].)
NOTES
[fn. 1] 1. Section 1368 provides: "If at any time during the pendency of an action and prior to judgment a doubt arises as to the sanity of the defendant, the court must order the question as to his sanity to be determined by a trial by the court without a jury, or with a jury, if a trial by jury is demanded; and, from the time of such order, all proceedings in the criminal prosecution shall be suspended until the question of the sanity of the defendant has been determined, and the trial jury in the criminal prosecution may be discharged, or retained, according to the discretion of the court until the determination of the issue of insanity."
[fn. 2] 2. It is true that the Legislature employed the term "court" in section 1368 primarily to designate a trier of fact other than the jury. But use of the word "court" rather than "judge" also suggests that the Legislature did not intend that the particular judge who orders a present sanity hearing preside at it. Many statutes in this state disclose that the Legislature is aware of the established distinction between "court" and "judge" and generally employs such a term in its technical sense. (Compare Civ. Code, 1155, subd. (d), and Pen. Code, 691, subd. 1 [using the term "court"], with Pen. Code, 94.5, 97, 3046 [using the term "judge"]; and see Pen. Code, 934, providing that a grand jury may seek "the advice of the court, or the judge thereof," but if it does not, that "the judge of the court" shall not be present at its proceedings.)
[fn. 3] 3. "In a proceeding under section 1368 a defendant is not charged with a criminal act and is not subject to criminal proceedings or punishment if he is found insane. It is a special proceeding rather than a criminal action." (People v. Fields, 62 Cal.2d 538, 540 [42 Cal.Rptr. 833, 399 P.2d 369]; see also In re De La O, 59 Cal.2d 128, 150 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705], holding that a special proceeding conducted upon suspension of a criminal action is not part of the criminal trial so that the constitutional guarantee of jury trial is not applicable.)
[fn. 4] 4. Obviously, where the attorney has doubts as to the present sanity of the defendant he should be able to make decisions as to how the proceedings should be conducted.
[fn. 5] 5. Defense attorney Gordon stated after criminal proceedings were resumed: "I felt at that time [of the original guilt trial] that there was a doubt as to the defendant's mental ability, that is, his sanity, as far as his ability to cooperate with counsel went. Certainly to this extent he was not cooperating with counsel. That doesn't necessarily mean that he can't, but at least it created a doubt in my mind. At that time I felt I certainly wasn't competent to judge the matter, it should be done by psychiatrists and evidently the psychiatrists in Dept. 95 determined that he is capable so far as the rule concerning present sanity goes of cooperating in his defense. He may or may not want to, but they have determined that he is capable of it. ..."
[fn. 6] 6. The procedure for determining an accused's competence to stand trial is wholly a matter of state law except in those cases where, unlike the instant case, the accused has come forward with substantial evidence of present insanity. (People v. Pennington, 66 Cal.2d 508 [58 Cal.Rptr. 374, 426 P.2d 942].) But even in cases where substantial evidence of insanity does appear, federal due process of law requires only that the state accord the accused a fair hearing on the sanity issue with the opportunity to prove his incompetence. (Pate v. Robinson, 383 U.S. 375, 385-386 [15 L.Ed.2d 815, 86 S.Ct. 836].)
[fn. 7] 7. Defendant's appointed counsel on appeal contends that a jury will not be impaneled in a proceeding in Department 95 until a finding has already been made that the defendant is medically insane. A law review comment entitled Commitment of the Mentally Ill--Superior Court of Los Angeles County (1962) 36 So.Cal.L.Rev. 109, is cited. But this comment discusses civil commitments, not proceedings under section 1368. There is no evidence at all that a jury trial would have been denied had it been demanded.
[fn. 8] 8. The court instructed the jury:
[fn. 9] 9. The instruction given reads: "The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. Whether or not evidence of flight shows a consciousness of guilt, and the significance to be attached to such a circumstance, are matters for your determination."
[fn. 10] 10. Since the judgment does not state that the prison terms for the two felony convictions were separately served, and because it appears the two convictions were obtained at a single trial, the judgment here could be used in the future, if at all, only to prove one prior conviction for which a prison term was served. (Cf. People v. Collins, 228 Cal.App.2d 460, 464 [39 Cal.Rptr. 595].)
[fn. 11] 11. Rule 33(a) of the California Rules of Court excludes argument to the jury from the normal record on appeal. (See subd. (2).) Rule 33(b) provides that an appellant may request inclusion of argument and other material not part of the normal record on appeal by filing "with his notice of appeal an application describing the material which he desires to have included and the points on which he intends to rely which make it proper to include it." The judge may then order inclusion "of as much of the additional material as, in his opinion, may be proper to present fairly and fully the points relied on by appellant in his application."