[Civ. No. 47525. First Dist., Div. Three. Jan. 8, 1980.]

JOHN D. HARRIS III, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Thomas J. Nolan, Jr., for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Morris Lenk, Deputy Attorneys General, for Real Party in Interest.

OPINION

**WHITE, P. J.**—This petition for writ of mandate challenges a trial court ruling that petitioner's speedy retrial rights (Pen. Code, § 1382) were not violated by a continuance granted counsel to permit preparation of a transcript of the first trial. Initially we denied the petition, but upon order of the Supreme Court we issued the alternative writ and have heard argument on the petition. We conclude again that the matter is controlled by the ruling in *Townsend* v. *Superior Court* (1975) 15 Cal.3d 774 [126 Cal.Rptr. 251, 543 P.2d 619], which permits defense

counsel to waive his client's rights to a speedy trial. Our reasoning follows.

Petitioner was first arrested on October 25, 1978, and charged with rape (Pen. Code § 261, subds. 2 and 3) and false imprisonment (Pen. Code, §§ 236-237). His first trial ended January 22, 1979, when he was found guilty as charged.

On April 20, 1979, Judge James Wright granted petitioner's motion for a new trial and set June 11, 1979 as the new trial date. On May 3, 1979, Judge David Leahy granted the motion of petitioner's attorney Lewis Becker to be relieved as counsel of record, appointing the public defender's office in his place. Assistant Public Defender Ron Norman, the person in charge of assigning cases to deputies, assigned petitioner's retrial to Deputy Public Defender C. Randall Schneider.

Schneider, who was on a previously arranged and paid-for vacation from May 7, 1979 until June 8, 1979, first learned of the assignment when he unexpectedly returned to the office either "sometime later in the week of May—say May 8th or 9th or 10th" or "a week later than that," in the "middle of May." On the day he returned to the office he obtained the file from Mr. Norman and called counsel from the first trial to get an overview of the case and to discuss the necessity for obtaining a transcript of the first trial. Based upon Becker's comments Schneider formed the opinion that he should obtain the transcript. He asked Mr. Norman to request preparation of the transcript.

When Schneider returned to the office on June 8, he noticed that nothing had been done to obtain the transcript, though Schneider himself had prepared points and authorities to support a request. Before he left to resume vacation Schneider had been advised by Mr. Norman that he would talk to Judge Wright and have the transcript ordered and that it might not even be necessary to file a formal motion. When Schneider returned and spoke to Norman about the matter, Norman could not recall the earlier conversation. Schneider had to search "all over the office" to find the file on petitioner's case.

On June 8, 1979, the date of his return, Schneider filed a motion requesting an order for a trial transcript. The motion was scheduled for June 18, 1979.

On June 11, 1979, petitioner's case was called on the trial calendar. At the hearing (before Judge Leahy) Schneider informed the court that 30 more days would be needed to obtain the transcript (the first trial consumed 10 days), and requested that the statutory speedy trial period be tolled for approximately 30 days. Petitioner himself made clear his objection to any waiver of time. The court continued the matter to June 18, 1979, for a hearing on the motion for preparation of the transcript and for trial setting. June 18, 1979 was the final day of the 60-day speedy trial period prescribed by Penal Code section 1382.

At the hearing on June 18, 1979 (before Judge John Flaherty), Schneider informed the court that the transcript would not be ready for another five weeks and offered to stipulate that time toll until it had been prepared, concluding that the transcript was "absolutely essential to [petitioner's] defense." Petitioner restated his position that he had not and would not waive time, noting that "the 60 days are just about up now, and I would like to still be tried within those 60 days." The court's immediate response was that trial within 60 days was required "unless, of course, there are reasons, good reasons why, and—that shouldn't happen, and your attorney, I think, has a good reason in this case." When petitioner objected further, counsel stated that "[t]he only way that we could proceed within the 60 days is if he wants to represent himself." At that point the court passed the matter to permit counsel and petitioner to talk.

When the hearing resumed the court ascertained that the positions of petitioner and counsel had not changed, granted the motion to obtain a trial transcript, and set retrial for July 23, 1979.

Subsequently, Schneider, along with Michael Kresser, the deputy public defender who normally handles motions, with the concurrence of Chief Assistant Public Defender Needham, reviewed the facts of the case and decided that in order to protect petitioner's rights a motion to dismiss on speedy trial grounds should be filed. The motion was filed July 11, 1979, arguing that counsel should not be permitted to waive a defendant's speedy trial rights merely because counsel wishes a transcript of a prior trial prepared before the retrial.

When the matter was heard by Judge Homer Thompson on July 23, 1979, private attorney Thomas Nolan substituted for the public defender on a pro bono basis, solely for purposes of the motion. Schneider was

called as a witness and testified concerning the above-mentioned facts. On petitioner's behalf Nolan argued that the defendant with appointed counsel has a right to make the choice of whether his speedy trial rights should prevail over his right to have his attorney fully prepared for trial. Nolan conceded that a defendant choosing speedy trial might "very well be giving up certain rights regarding the Sixth Amendment right to counsel, effective counsel," but argued that it should be the defendant, not the court, making the choice. The order denying petitioner's motion to dismiss was filed August 2, 1979, and this petition followed.

Penal Code section 1382 provides in part: "The court, unless good cause to the contrary is shown, must order the action to be dismissed in the following cases:. . .[¶] 2. When. . .in case the cause is to be tried again following. . .an order granting a new trial from which an appeal is not taken,. . .[a defendant is not brought to trial in a superior court] within 60 days after. . .entry of the order granting the new trial. . . except that an action shall not be dismissed under this subdivision if it is set for trial on a date beyond the 60-day period at the request of the defendant or with his consent, express or implied, . . .and if the defendant is brought to trial on the date so set for trial or within 10 days thereafter."

Petitioner contends that, at least where counsel's reasons relate to his own preparation for trial, the consent of *counsel* to trial beyond the 60-day deadline is ineffective against an objection by the *defendant* to any delay in trial beyond the statutory deadline. Petitioner acknowledges that in *Townsend* v. *Superior Court, supra,* 15 Cal.3d 774, the Supreme Court reached a contrary conclusion, but argues that the *Townsend* decision is distinguishable.*

In *Townsend,* the information was filed August 16, 1974, and the public defender was appointed to represent the defendant. At a hearing held August 29, the court set a trial date of October 25. Counsel consented to that trial date (beyond the 60-day limit). On the date set for trial counsel requested a continuance until October 28 because his heavy caseload had prevented him from adequately preparing for trial. On October 28, the same counsel moved for another continuance on the same grounds and trial was reset for November 7. On that date counsel

---

*Petitioner also asserts that the validity of *Townsend* is in issue in two cases presently pending before the Supreme Court: *People* v. *Johnson* (Crim. 20710) and *People* v. *Sheehan* (Crim. 20810). Obviously, it is not for us to speculate about the validity of the rules stated in *Townsend.*

was in another trial and a colleague appeared on the petitioner's behalf. The court and counsel agreed that the matter could be trailed until counsel became available. Trailing continued until November 12, when counsel appeared and announced that he was ready for trial but explained that he was trailing in another case deemed by counsel to be more pressing. Counsel requested the matter be trailed until the other trial was completed. Out of concern that the 10-day grace period found in the last sentence of section 1382, subdivision 2, would expire, the matter was eventually scheduled for November 18, the last day of the 10 days.

On November 18, the parties appeared, ready to proceed, but the court, over defense counsel's objection, continued the matter until November 25 because of a calendar conflict. The court calculated the 10-day grace period from November 18, whereas the defendant calculated it from November 12, the date when counsel stated he was ready. A defense motion to dismiss for violation of section 1382 was denied, and review of that denial was obtained by writ.

Before addressing the question of when the grace period began, the *Townsend* court considered the question of whether counsel could properly consent to trial beyond the 60-day limit. The court noted that the defendant at no time personally agreed to a continuance beyond 60 days, and at every stage of the proceedings refused to "waive time" and pointed out to the court that he had been in custody beyond 60 days and should be tried or released.

The court resolved the issue as follows: "We have concluded, subject to certain limitations, that consent of counsel alone without that of the client, satisfies section 1382, subdivision 2. While no previous California cases have considered the precise issue, the general import of other cases dealing with similar issues arising from related and parallel circumstances supports such a conclusion. In *People* v. *Kirkpatrick* (1972) 7 Cal.3d 480, 485-486 . . . for instance, we rejected a speedy trial claim despite the fact that the defendant had personally refused to waive time. Citing *People* v. *Merkouris* (1956) 46 Cal.2d 540, 554 . . ., we held that counsel's consent to delays beyond 60 days is sufficient, at least where the continuances are reasonable. In *People* v. *Wilson* (1974) 40 Cal.App.3d 913 at page 915 . . ., the Court of Appeal upheld the trial court's grant of continuances at counsel's request where no affirmative consent was obtained from the defendant, the court stating

in dictum that 'even if appellant had voiced an objection, his attorney would have had authority to seek continuance over the client's protest. [Citations.]'

"In general, it is well established that the power to control judicial proceedings is vested exclusively in counsel. (*People v. Kirkpatrick, supra,* 7 Cal.3d 480, 486 [102 Cal.Rptr. 744, 498 P.2d 992]; *People v. Floyd* (1970) 1 Cal.3d 694, 704...*People v. Merkouris, supra,* 46 Cal.2d 540, 554 [297 P.2d 999].) It follows that '[e]xcept where representation by counsel is so ineffective that it can be described as a "farce and a sham" [citations], an attorney may ordinarily waive his client's rights....' (*People v. Hill* (1967) 67 Cal.2d 105, 114....) Where counsel has been appointed and is present in court 'neither the party himself [citations] nor another attorney [citations], can be recognized.' (*People v. Merkouris, supra,* 46 Cal.2d at pp. 554-555.) While the United States Supreme Court has recently held that a criminal defendant cannot be denied the right to represent himself if he knowingly and intelligently chooses to forego the assistance of counsel (*Faretta v. California* (1975) 422 U.S. 806...), *Faretta* has no effect on cases such as that before us where counsel has in fact been appointed. In such instances, *Faretta,* in discussing California criminal procedure, notes: 'The appointed counsel manages the lawsuit and has the final say in all but a few matters of trial strategy. [Citations.]' (*Faretta v. California, supra,* 422 U.S. at p. 812, fn. 8....)

"Counsel's control, of course, is not unlimited, and there are certain fundamental protections guaranteed an accused which counsel may not waive without his client's concurrence. (*Brookhart v. Janis* (1966) 384 U.S. 1, 7...[jury trial and confrontation]; *People v. Williams* (1970) 2 Cal.3d 894, 905...[same]; *People v. Robles* (1970) 2 Cal.3d 205, 215...[right to testify in own defense].) The right to a speedy trial is undeniably 'as fundamental as any of the rights secured by the Sixth Amendment' (*Klopfer v. North Carolina, supra,* 386 U.S. 213, 223...), and we have previously stated in dictum that counsel may not waive this *constitutional* right over his client's objections. (*People v. Floyd, supra,* 1 Cal.3d 694, 706-707 [83 Cal.Rptr. 608, 464 P.2d 64].) In contrast, however, the *statutory* right to be tried within 60 days (§ 1382, subd. 2) cannot properly be termed 'fundamental' in the foregoing sense and therefore beyond counsel's primary control. Being of statutory origin, a defendant's rights under section 1382 are 'merely supplementary to and a construction of the Constitution. [Citations.]'

(*Sykes* v. *Superior Court, supra,* 9 Cal.3d 83, 89 [106 Cal.Rptr. 786, 507 P.2d 90].) They do not carry the force or weight of constitutionally mandated imperatives. In this connection we think it significant that the United States Supreme Court has clearly rejected the proposition that the constitutional right to a speedy trial '...can be quantified into a specified number of days or months.' (*Barker* v. *Wingo* (1972) 407 U.S. 514, 523....)

"The case before us presents a confrontation between two of the defendant's rights, the right to a speedy trial constitutionally guaranteed and statutorily implemented and amplified within the time framework of Penal Code section 1382 on the one hand, and his Sixth Amendment right to competent and adequately prepared counsel on the other. In such a situation, in the words of the appellate court in *People* v. *Powell* (1974) 40 Cal.App.3d 107, 148..., the trial court must carefully navigate procedurally between 'the Scylla of delay and the Charybdis of ineffective and inadequate representation.'" (15 Cal.3d at pp. 780-782.)

The *Townsend* court ultimately concluded that the 10-day grace period began on November 18, when counsel first objected to any further delay, and that under the circumstances all the continuances were justified. It reasoned as follows: "Accordingly, three reasons appear for the delay in petitioner's trial: (1) Inability of defense counsel adequately to prepare for trial announced by him on October 25th and 28th, (2) conflict in trial dates involving defense counsel resulting in a 'trailing' which occurred on November 7th, 12th, 13th and 15th, and (3) a court calendar conflict on November 18th. Inadequacy of time for defense counsel to prepare for trial, and calendar conflicts of court and defense counsel account for the delay involved.

"We are cognizant of the heavy caseloads resting upon the criminal trial courts of this state and upon the affected prosecutors' and public defenders' offices as well, and for the sheer necessity of the 'trailing' practice here indulged. We have concluded that the trial court adopted the proper course in the matter before us. However, our holding herein is carefully circumscribed. We do not suggest that counsel possesses carte blanche under any and all conditions to postpone his client's trial indefinitely. Counsel's power in this regard is not unlimited. '[A] criminal defendant may not be deprived of a speedy trial because the prosecution—or the defense—is lazy or indifferent, or because the prosecution seeks to harass the defendant rather than bring him fairly to

justice. . . ." (*People* v. *Floyd, supra,* 1 Cal.3d 694, 707.) No such circumstances are herein presented. Nor may counsel effectively waive his client's rights where the record reveals that the latter was the victim of inadequate representation. (See *People* v. *Hill, supra,* 67 Cal.2d 105, 114 [60 Cal.Rptr. 234, 429 P.2d 586].) This is not such a case. All requests for continuance were reasonably justified. Defense counsel is undoubtedly well qualified to represent petitioner, and is pursuing his client's best interests in a competent manner." (15 Cal.3d at pp. 783-784.)

■ Petitioner attempts to distinguish *Townsend* by asserting that "[i]n *Townsend* the court-appointed defense attorney was not able to go to trial because of other commitments to try unrelated cases (*Townsend* at 778-9). In the present case the request for a continuance was solely based upon petitioner's court-appointed attorney's need to prepare for petitioner's trial. Certainly a defendant should not be able to control an attorney's decision as to which case to try first or to give priority. But in the case at bar a denial of a continuance and the request for a transcript would have affected petitioner's case only."

We reject this interpretation of *Townsend.* In *Townsend,* when trial was originally set for October 25, it was set beyond the statutory limit in spite of the fact that the defendant objected "at every stage of the proceedings" to any waiver of time. Though the opinion does not explain why the original trial date was set beyond the 60-day limit, the continuances to October 28 and to November 7 were "because [counsel's] heavy caseload had prevented him from adequately preparing for petitioner's trial." (15 Cal.3d at p. 778.) Thus, it was *not* present involvement in other trials or even the need to prepare for other trials which caused the first continuances. It was lack of preparation for *Townsend's* trial. The parallel with this case is obvious.

In *Townsend,* only on November 7 and during the following 11 days was counsel unavailable because he was engaged in other trial proceedings. Yet the court concluded that "[a]ll requests for continuance were reasonably justified." (15 Cal.3d at p. 784.) This is a direct statement that under proper circumstances counsel's inability to prepare for trial may be an adequate justification for a continuance even in the face of the defendant's urging of an earlier trial date. Implicitly the *Townsend* court rejected petitioner's contention that a defendant with appointed counsel may routinely choose his speedy trial rights over the right to adequate representation at trial.

Even under *Townsend,* however, counsel does not possess "carte blanche" authority to postpone trial. If counsel is "lazy or indifferent" or if the defendant is otherwise the victim of inadequate representation, counsel's waiver will be ineffective and the case should be dismissed. (15 Cal.3d at p. 784.) Implicit in trial court denial of the motion to dismiss is a ruling that counsel here met the standards established in *Townsend.* We cannot disturb that finding, as we find substantial evidence to support it.

It is true that we might find fault with the public defender's office for assigning the case to a deputy presently on vacation and who would not return until one week before the 60-day limit expired. However, it was not that assignment which caused the delay. Deputy Schneider made an early attempt to obtain the transcript. Even had his request gone through, the four to five weeks needed to prepare the transcript would have consumed most, if not all, of the statutory time. His request was ineffective because of an administrative oversight which cost the defendant approximately 35 days. While we by no means condone such error, we cannot conclude as a matter of law that it shows that counsel was "lazy or indifferent" or otherwise ineffective.

The alternative writ of mandate previously issued is ordered discharged and the request for a peremptory writ is denied.

Scott, J., and Takei, J.,* concurred.

A petition for a rehearing was denied February 7, 1980, and petitioner's application for a hearing by the Supreme Court was denied March 6, 1980.

---

*Assigned by the Chairperson of the Judicial Council.