[Crim No. 2872.   Third Dist.   Oct. 23, 1959.]

THE PEOPLE, Respondent, v. JAMES CHARLES BUTCHER, Appellant.

James B. Thompson, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and G. A. Strader, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—James Charles Butcher was found guilty of a violation of section 211 of the Penal Code, robbery (in the second degree); section 459, burglary (in the second degree); and section 261, subdivision 4, rape. The court ordered the sentences on the counts of rape and burglary to run concurrently with each other and the two to run consecutively with the judgment of conviction of robbery. Butcher has appealed from the judgment entered and from the order of the court denying his motion for a new trial.

The evidence stated in the light most favorable to the respondent discloses that about 2:30 p. m. on December 5, 1957, Butcher knocked on the door of the residence of the

victim. When she answered, he told her that he would like to see her house which was for sale. Butcher was shown through the home and the patio. After he returned to the house from the patio, he turned, stuck his hand in his pocket, and said, "Lady, this is a stick-up! . . . do as I say or you'll get hurt! . . ." In reply to her question, "What do you want?" he said, "I want your money." The victim did not see what Butcher had in his pocket. She was "so nervous . . . [her] legs wouldn't hardly hold . . . [her] up." Because she was so "afraid of him," she went into a bedroom where she obtained her purse and gave him between three and four dollars. Butcher then ordered her into the bathroom, and when she asked why he said, "Lady, if you don't want to get hurt or killed, get in that bathroom!" He told her that he was going to molest her. The victim disrobed. She was ordered into one of the bedrooms. Butcher in the meantime had removed a camera from a box which was in a plastic bag he had been carrying. He took several pictures of the victim. These were revolting in their implications. After he took the pictures, he asked her to perform an unnatural sexual act, and after she refused he performed an act of sexual intercourse.

After committing the offenses, Butcher called a cab and when it arrived he left. But before he left he told the victim, "I wasn't supposed to rape you, this house was picked out for robbery, only." The victim called the police. She was taken to a hospital where an examination disclosed that she had had an act of sexual intercourse. Butcher was arrested several days later by the police. The victim identified him as the man who had committed the acts. Butcher represented himself at the trial. He did not take the stand. The defense consisted of character witnesses.

Appellant's first contention is that he did not properly or legally waive his right to counsel. The record discloses that appellant had five years of schooling. He was described by psychiatrists who examined him as being an alert person, somewhat grandiose in believing that he had considerable knowledge of law "because he had been around, in his younger days, with a boy and his brother, both of whom were now lawyers, and had read some of their books on law; . . ." The record also discloses that appellant waived counsel at the time of the arraignment, though counsel was appointed to represent him at that time; and that when the case was called for trial the court said, "Just so we'll have no mistaken idea

about this, I want to be cautious enough to be sure you understand, Mr. Butcher, you have been already informed of your rights and you have indicated to the Court that you wish to defend yourself in this matter.'' Appellant replied, ''That is true, . . . .'' The court also said, ''So I just want to have you understand . . ., if you desire, you had a right to counsel, you could have employed counsel, if you were in a position to do so, or if you were not in a position to do so, the Court would have appointed counsel. Now, with that understanding, you wish to proceed without an attorney.'' Appellant indicated that he did. The cause then proceeded to trial. Roscoe Oldham, not an attorney, at appellant's request, also sat at the counsel table during the trial to assist appellant.

■ An accused may waive the assistance of counsel, but before there can be an effective waiver the defendant must have an intelligent understanding of his act. (*People* v. *Chesser,* 29 Cal.2d 815 [178 P.2d 761, 170 A.L.R. 246].)

■ One purpose of the constitutional right of a defendant in a criminal case to be represented by counsel is to protect him from his own ignorance of his legal and constitutional rights. ■ The determination of whether or not there has been an intelligent waiver involves a consideration of the nature of the charge, the facts and circumstances of the case, and the education, experience, mental competence, and conduct of the accused. In order for a trial judge to determine whether there has been a competent and intelligent waiver of counsel, he must first ascertain whether the defendant clearly understands the nature and effect of his waiver. (*People* v. *Chesser, supra,* p. 822.)

■ In the instant case the record discloses that the appellant is a man of normal intelligence who had had several previous brushes with the law. The record shows that immediately prior to the selection of the jury the court again advised appellant of his right to counsel, and appellant stated that he wished to defend himself. The record shows that he not only cross-examined the prosecution's witnesses but that he made an argument to the jury that occupies 49 pages of the record.

In view of the record it cannot be said that appellant was not fully aware of his right to counsel, and in view of his insistence that he wished to defend himself the court was not required to appoint counsel to defend him. The following quotation from *People* v. *Linden,* 52 Cal.2d 1, at pages 16 and 18 [338 P.2d 397], is applicable:

"Defendant's appeal counsel assert that the trial court did not determine that defendant understood the issues and available defenses and had capacity to effectively waive counsel, as required by *Johnson* v. *Zerbst* (1938), 304 U.S. 458, 464-465 [58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357] ; *In re James* (1952), 38 Cal.2d 302, 313 [8] [240 P.2d 596] ; and *People* v. *Chesser* (1947) 29 Cal.2d 815, 822-825 [4-6] [178 P.2d 761, 170 A.L.R. 246]. . . .

. . . . . . . . . . .

"Before the trial court allowed defendant to represent himself, it held lengthy discussions with him and had ample opportunity to observe his abilities and disabilities. As in *People* v. *Mattson* (1959), *supra*, 51 Cal.2d at pp. 788 [1], 794 [18], the entire record establishes that defendant was fully aware of his situation when he insisted upon representing himself, and the court was not required to demand that defendant, as a prerequisite to appearing in person, demonstrate either the acumen or the learning of a skilled lawyer. No abuse of discretion is shown."

Appellant next contends that the court committed prejudicial error in permitting the introduction in evidence of People's Exhibit Number 15. Following the appellant's arrest he was interviewed by the district attorney on December 19, 1957. A stenographic reporter who took down the conversation verbatim was produced as a witness to testify concerning the contents of such statement or conversation. The reporter subsequently transcribed his notes and reduced the same to a typewritten report of the conversation. The appellant asserts that this typewritten statement was introduced in evidence as People's Exhibit Number 15. The clerk's transcript at page 23, line 19, indicates that the typewritten statement was introduced in evidence. However, an examination of the reporter's transcript does not show that it was ever offered in evidence or received in evidence by the court. The prosecution asked that it be marked for identification, but it was never introduced in evidence.

The reporter testified that the transcript was a true and correct transcription of his shorthand notes. He testified concerning the conversation by reading his original notes into evidence in the presence of the jury. The appellant contends that this procedure was erroneous and that the reporter should have been permitted to only refer to his notes for the purpose of refreshing his recollection and should not have

read the statement into evidence directly from his notes or the typewritten transcription.

The witness who made the transcript could testify as to his recollection, or he could use the document to refresh his memory, or he could testify as to the correctness of the statement and then testify from it, though he had no present recollection of the facts. This latter method is commonly referred to as past recollection recorded. In the instant case the reporter read his notes. This would be proper. (*People* v. *Gardner,* 147 Cal.App.2d 530, 538 [305 P.2d 614].) But before this may be done a proper foundation must be laid. Here the witness testified he was present and that he transcribed the conversation, and then the conversation was read from the original notes. The witness should have been asked if he retained a recollection of the conversation, for the Code of Civil Procedure, section 2047, provides that a witness may testify from such a writing though he retains no recollection of the particular facts. This means that he must testify first that he is unable to refresh his memory or testify independently therefrom. (*People* v. *Keelin,* 136 Cal.App.2d 860 [289 P.2d 520, 56 A.L.R.2d 355].)

Appellant concedes that "if the reporter had no independent recollection of what was said, then his notes could have been qualified as past recollection recorded, and . . . admitted in evidence (CCP 2047; *People* v. *Keelin, supra* [136 Cal. App.2d 860, 877])," but argues that the court erred in receiving the reporter's testimony in the form of reading his notes verbatim, because the proper procedure was not followed. However, the only objection made to the reading of the notes at the trial was on the ground that appellant had not signed the statement. If a proper objection had been made, the proper foundation would no doubt have been laid, for it is inconceivable that the reporter would be able to remember or repeat verbatim a conversation that occupied more than 50 pages of the record. Furthermore, the appellant could not have been prejudiced by the reading of the reporter's transcription because in it appellant detailed his movements on the day of the crimes with which he was charged, and the statement if believed by the jury would have cleared him of any guilt.

■ Appellant next contends that the evidence is insufficient to support his conviction on the charge of rape under subdivision 4, section 261 of the Penal Code, which provides that it is rape where the female is prevented from resisting by threats of great and immediate bodily harm, accompanied

by apparent power of execution. There is no merit in this contention. The evidence discloses that when the victim was ordered to get in the bathroom she was told that if she did not want to get hurt or killed she had better get in there. He then told her, "Get those clothes off or I'll hurt you, . . . ." When the robbery was committed appellant reached into his pocket and simulated a weapon. Thereafter he threatened to hurt her. Under the circumstances it was for the jury to determine whether or not the victim was prevented from resisting by threats of great and immediate bodily harm. The victim could well have believed that appellant had a weapon to back up his threats, and if so, the evidence is sufficient to sustain the conviction. (See *People* v. *Peterman*, 103 Cal. App.2d 322 [229 P.2d 444]; *People* v. *Cassandras*, 83 Cal. App.2d 272 [188 P.2d 546].)

Appellant next contends that the district attorney was guilty of prejudicial misconduct. The first instance concerns the opening argument of the district attorney during which the jury was told, "It is quite a shock, because she had a horror of knives. This man carried a gun? Maybe." Appellant contends that this was error because the district attorney was making a statement as to facts not in evidence. No objection was voiced and the general rule is that where no objection is made the misconduct claimed to be prejudicial to the rights of the defendant will not furnish grounds sufficient to justify reversal of the judgment. The evidence disclosed that appellant stuck his hand in his pocket and said that this was a stickup. The victim did not see what was in his pocket. The victim later testified that she was afraid of knives and that she was afraid that appellant might have a knife. With these facts in the record, we do not believe it was improper for the district attorney to say appellant may have had a weapon. The issue was relevant to the question of fear which was an element of the robbery charge. Likewise, there was no error in the district attorney's reference statement that the prosecutrix had been ill for many years, as she so testified.

Appellant contends also that the district attorney was guilty of misconduct when in his argument to the jury he said, in referring to an interview between the district attorney and appellant, "When he asked him, 'Were you at this place?' 'I refuse to answer.' The guardhouse lawyer, he stood on the Fifth Amendment . . . ." An objection was made that this was improper. The remark no doubt refers to the refusal of

appellant to answer certain questions. These were: "Q. Do you have anything at all that you care to tell us? A. No, nothing. Q. So far as this matter is concerned? A. So far as this matter is concerned I have nothing to tell you. As it is, I mean so far as the charge is concerned I am innocent and that is all I have to say about it. Anything other than that, there is no use commenting about it." We do not believe that the district attorney's comment exceeded the bounds of legitimate argument, as he had a right to comment on appellant's refusal to answer questions.

Appellant contends also that the district attorney "transcended all legitimate bounds of fair comment" in his argument when he stated to the jury that the defendant could have, if he had taken the stand, denied complicity or alleged consent; that the state did not have the opportunity to cross-examine the defendant because he refused to take the stand. There was no misconduct as the district attorney had a right to comment on appellant's failure to testify.

Appellant also contends the district attorney committed error when he told the jury "There was a witness right outside this door, three doors from . . . [the victim's home], but sometimes you save your witnesses for the end, and yet when he—took the stand in anticipation, I would have asked him the question, he would have denied it, and I would have called the others in." Prior to this statement appellant in his argument to the jury had said, "Now, what did they get at the . . . [victim's] house? How many witnesses right around . . . [the victim's house] said, 'Yes, I seen the man.' How many? Think it over." Appellant also made reference to the prosecution's failure to call the cab driver. The argument of the district attorney was really an answer to the questions raised by the appellant. While the district attorney should not have made the statement, we do not believe that under the circumstances it was reversible error. (*People* v. *Perkin*, 87 Cal.App.2d 365 [197 P.2d 39]; *People* v. *Cordish*, 110 Cal. App. 486 [294 P. 456].)

Appellant's final contention is that the court erroneously instructed the jury with respect to the elements of general intent and specific intent. The instructions given by the court on intent were as follows:

"An essential element of the crimes of which the defendant is accused is intent, the law requiring that to constitute such crimes there must exist a union or joint operation of criminal conduct and criminal intent. However, this does not mean

that one must intend all the consequences of his conduct, or that he must know that such conduct is unlawful, to be guilty of public offenses such as those charged against the defendant in this case. The intent to do the forbidden things constitutes the criminal intent. The law requires that to be guilty of crime, one must intend the conduct that fits the description of the crime and must engage in that conduct knowingly and wilfully.''

''Every person who enters any house . . . with intent to unlawfully steal, take or carry away the personal property of another of any value or to commit any felony is guilty of burglary. The essence of a burglary is entering a place such as I have mentioned with such specific intent; and the crime is complete as soon as the entry is made, regardless of whether the intent thereafter is carried out.

''The degree of burglary as charged in the Information in this case is Second Degree Burglary.''

Appellant was charged with three offenses: rape, robbery, and burglary. The crimes of robbery and burglary require a specific intent. (*People* v. *Morlock*, 46 Cal.2d 141 [292 P.2d 897].) An instruction as to specific intent was given as to burglary but none was given as to robbery. An instruction as to specific intent should have been given as to robbery, and a third instruction should have been given telling the jury that the instruction as to general intent related only to the count of rape and not to the counts of robbery and burglary. (*People* v. *Booth*, 111 Cal.App.2d 106 [243 P.2d 872].) In *People* v. *Booth, supra,* an instruction was given as to the general intent and an instruction was also given as to specific intent. In holding that this was error, the court said at page 108:

''The two instructions are in direct conflict. One states that in order to constitute the offense the act must be committed with the intent of arousing the passions, etc., of the accused or the child, the other that criminal intent is merely the intent to commit the act which constitutes the crime, even though there be no bad motive. The first describes the specific intent which is an element of the crime here charged, the second the general intent or violation of the actor which is an element of every crime or public offense. Since the second instruction relates to all crimes, it embraces those which require proof of a specific intent. Under this instruction defendant could have been convicted without evidence or a finding of a specific

intent, and to give it was error. (*People* v. *Geibel,* 93 Cal.App.
2d 147, 176 [208 P.2d 743].)

"We are at a loss to understand why it was given, or why
it is given in so many cases where it can serve no purpose and
tends to create confusion. To be sure it states the law as
declared in the Penal Code, but this is no reason for giving
an instruction which expounds legal principles that are wholly
irrelevant to the issues. In every case involving specific intent
an instruction on specific intent is sufficient for all purposes.
It embraces all the elements of general intent. When instruc-
tions are given on both general and specific intent a third
instruction is necessary which states that the instruction on
general intent does not relate to crimes which require proof
of specific intent. . . ."

Under the rules set forth in the Booth and Morlock cases,
there would appear to be no question but that the jury was
improperly instructed as to the counts on robbery and bur-
glary. But whether such error was so prejudicial as to war-
rant a reversal must be determined as a matter of law from
an examination of the entire record. (Cal. Const., art. VI,
§ 4½.)

At the outset it should be noted that the appellant, in his
unsworn statement taken by the district attorney, categorically
denied the commission of any crime; that at the trial he did not
testify; and that he offered no defense whatever, although he
did produce several character witnesses. Thus, the testimony
of the victim remains wholly uncontradicted.

Section 459 of the Penal Code provides that "Every person
who enters any house . . ., with intent to commit . . . any
felony is guilty of burglary." Section 211 of the Penal Code
provides: "Robbery is the felonious taking of personal prop-
erty in the possession of another, from his person or immediate
presence, and against his will, accomplished by means of force
or fear."

As previously noted, the victim testified that while showing
her house to the appellant he placed his hand in his pocket and
said, "Lady, this is a stick-up! . . . do as I say or you'll get
hurt! . . . I want your money;" that because of her fear of
him she gave him her purse which contained three or four
dollars; and that just before he. left he stated, "I wasn't
supposed to rape you, this house was picked out for robbery,
only."

We conclude, as did the court in the Booth case, that "The
error in the instructions, when considered with the evidence,

would not warrant a reversal. . . . It is clear to us that the error in the instructions did not influence the verdict and that defendant was not harmed by it.'' This is true since the evidence is so conclusive that appellant entered the house to commit a felony, to wit, robbery, and that he did through force and fear take from the possession of the victim a sum of money. These facts stand uncontradicted, other than the unsworn statement made to the district attorney by the appellant. In order to convict, the jury had to believe the victim, and that testimony clearly established the appellant's guilt as to all three crimes.

The judgment is affirmed.

Peek, Acting P. J., and Warne, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.