449 P.2d 942

**Raymond Mendoza OLIVAS, aka Junior Calderon, Petitioner,**

v.

**Frank A. EYMAN, Warden, Arizona State Prison, Respondent.**

No. 9406.

Supreme Court of Arizona.

In Banc.

Jan. 30, 1969.

Rehearing Denied March 4, 1969.

Gary K. Nelson, Atty. Gen., by Thomas M. Tuggle, Asst. Atty. Gen., Phoenix, for respondent.

Kaplan, Wilke & Abrams, by Philip M. Haggerty, Murray Miller, Phoenix, for petitioner.

HAYS, Justice:

This is a petition for a Writ of Habeas Corpus filed by Raymond Mendoza Olivas, aka Junior Calderon. Mr. Olivas was tried and convicted for his role in the February 24, 1961 murder of Rudolfo Valenzuela. The petitioner is presently incarcerated at the Arizona State Prison at Florence.

The State of Arizona jointly tried the petitioner and Jesus Arthur Pina. The evidence indicated that Olivas and Pina, together with Louis Lopez and the deceased, drove to a secluded spot in the desert near Guadalupe, purportedly for the purpose of obtaining a cache of narcotic drugs. Upon alighting from their automobile, Pina accused deceased of being an informer. The deceased was shot twice by Pina, but nonetheless had enough strength to knock the gun from Pina's hand. He attempted to run from his assailant, but was tackled by Pina and the petitioner. Petitioner and Pina thereupon beat the deceased to death, first with their fists, then with an automobile jack. The victim's body was not found until almost four months later.

The petitioner, following his conviction, failed to file an appeal with this court within the statutory period. The petitioner's motion for a delayed appeal was denied. Arizona Supreme Court No. 1748, cert. denied, 388 U.S. 918, 87 S.Ct. 2137, 18 L.Ed. 2d 1363 (1967).

Mr. Olivas bases his petition on the improper admission of evidence which violated his right of confrontation under the 6th and 14th amendments of the United States Constitution. At the petitioner's trial, Louis Cruz Lopez, the state's key witness, was permitted to testify to admissions made by Pina after the murder which implicated the petitioner. These statements were not made in the presence of the petitioner.

According to the transcript, Lopez testified:

"A. Mr. Pina told me Mr. Olivas and himself had taken turns hitting Mr. Valenzuela at the head like you would a golf ball."

At another point in the state's direct examination of Lopez, the following responses were given:

"Q. What did Mr. Pina have to say?

A. Well, he said that he had to take the gun away from Mr. Olivas, that he wanted him for himself.

Q. Did he say anything about what Mr. Olivas wanted to do?

A. He said he wanted to kill him. He wanted to take the gun away from him."

The trial judge, upon the motion of defense counsel, specifically instructed the jury that these statements should be disregarded as evidence against the petitioner. The jury was permitted to consider these statements as evidence against Pina under the well established "admissions" exception to the hearsay rule. In 1957, the United States Supreme Court upheld the admission of these qualified confessions in Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957). It is the petitioner's position that the recent decisions of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968) however, compel this court to grant a Writ of Habeas Corpus. In Bruton, the United States Supreme Court specifically overruled their prior decision in Paoli. In so doing, they set aside the conviction of a defendant who had been inculpated in the crime by a confession of a codefendant that was admitted into evidence at their joint trial. Although the jury in Bruton had been instructed to disregard the inculpatory statement as it related to petitioner, the Supreme Court held that the introduction of such statements, where the codefendant failed to take the stand, denied the defendant his right to confront the witnesses against him. In Roberts v. Russell, supra, the United States Supreme Court made their holding in Bruton retroactive. It is the petitioner's contention that since codefendant Pina failed to take the stand, he has been denied his right of confrontation as defined by the Bruton decision.

We are of the opinion that the admission of Pina's statements inculpating the petitioner are within the scope of the Bruton and Roberts decisions. We are nonetheless of the opinion that the constitutional error is harmless and that the Writ of Habeas Corpus should be denied.

The joint trial of petitioner and codefendant Pina exceeded two weeks in duration. Thirty five different witnesses were called upon to testify, either for the state or for the defense. The transcript of the trial covers 1135 pages. There was substantial testimonial as well as demonstrative evidence to support the conviction of the petitioner.

The improperly admitted statements cover but a fraction of the testimonial evidence introduced against the petitioner. Louis Lopez was an eye and ear witness to such a degree that the statements improperly admitted amount to little more than surplusage. This conclusion is supported by the following eye witness account of the murder:

"Q. * * * How was the gun knocked out of Pina's hand?

A. Well, from what I could see, Mr. Pina was still holding the gun down close to his—like this (indicating), in this manner, and Mr. Valenzuela more or less flung his arm out and hit Mr. Pina's arm, and the gun flew out of his hand.

Q. Then what did Mr. Valenzuela do or attempt to do?

A. Well, he attempted to run away from Mr. Pina at the time. He ran south, in a southeasterly direction.

Q. Then what happened?

A. Well, Mr. Pina and Mr. Olivas both ran after him. They caught him. They beat him with their fists—.

Q. Did they go a long distance or a short distance or what?

A. Well, I would say 15, 20 yards.

Q. Did they catch up with him?

A. Yes sir, they did.

Q. What happened?

A. They beat him with their fists. During the time that Mr. Pina shot Mr. Valenzuela, he never fell he never once fell. After they caught him and beat him, they knocked him down, they were kicking him and hitting him with their fists * * "

\* \* \* \* \* \*

"Q. At that time did you see Mr. Pina?

A. Yes sir, I did.

Q. What he looked like and so forth?

A. Yes sir. He was breathing very hard, and his clothes were all disarranged.

Q. Did he say anything to you when he came back?

A. Yes sir, he did. He said, 'open the trunk of the car.'

Q. Do you know where Olivas was at that time?

A. Yes sir, I do. He was holding Mr. Valenzuela down on the ground."

\* \* \* \* \* \*

"Q. When you opened the trunk, what, if anything did Mr. Pina do?

A. He told me to get the jack out of the car.

Q. Then what happened?

A. I told him, 'I won't do it.' All the time we were standing there arguing about this, I could hear Mr. Olivas yelling at Mr. Pina. He said, 'hurry, Jesse, I can't hold him down much longer.' "

Mr. Lopez subsequently testified:

"A. * * * By the time I reached Mr. Pina and Mr. Olivas they were already dragging the body.

Q. They were dragging the body?

A. Yes sir.

Q. Could you tell us just how they were dragging the body?

A. They were dragging him by his arms, and shoulders.

Q. Where did they drag him to?

A. They drug him in a southerly direction.

Q. Did they finally lie the body to rest?

A. Yes sir, they did.

Q. Did you help them drag the body?

A. No sir. I never touched Mr. Valenzuela's body at any time.

Q. When the body was laid down, what, if anything happened then?

A. Well, they laid the body down, and Mr. Pina went through all his clothing, or most of his clothing. He just went—went through some pockets. Mr. Olivas took Mr. Valenzuela's jacket and just pulled it over his head."

When the deceased victim's body was found four months later, the jacket was pulled over the victim's head.

In light of the exhaustive record, the multitude of witnesses, the complexity of the case, the extended duration of the trial, and the considerable amount of testimonial and demonstrative evidence properly admitted against the petitioner, we are of the opinion that the constitutional error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The petition is denied.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER and McFARLAND, JJ., concur.