458 P.2d 950

**The STATE of Arizona, Appellee,**

v.

**Jessie Charles PATTERSON, Appellant.**

**No. 1826.**

Supreme Court of Arizona.

In Banc.

Sept. 18, 1969.

Gary K. Nelson, Atty. Gen., by Carl Waag, Sp. Asst. Atty. Gen., Phoenix, for appellee.

Fred R. Esser, Phoenix, for appellant.

STRUCKMEYER, Justice.

Appellant, Jessie Charles Patterson, was charged with the crime of murder in the first degree and after trial by jury was convicted of manslaughter. We granted a delayed appeal (Rule 16, Rules of the Supreme Court, 17 A.R.S.) based on asserted psychological pressures which coerced the abandonment of a timely appeal. The sole question raised concerns the admissibility at the trial of a confession Patterson made on the grounds that there was no intelligent and voluntary waiver of his right to counsel.

Briefly, the facts are these: On July 19, 1966, appellant, a negro having little more than a grammar school education, went to the residence of one Eddie Gordon and there shot at him with a .25 caliber pistol five times. Three of the bullets struck Gordon. Seemingly, appellant and Gordon were quarreling over the affections of a woman by the name of Velma Jean Belcher. Approximately three hours later, appellant was taken into custody by Police Officer

Richard Bequette and shortly thereafter gave a statement to the deputy county attorney in the presence of a reporter concerning his participation in the homicide. The trial judge, following the procedures outlined in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3rd 1205 and see State v. Owen, 96 Ariz. 274, 394 P.2d 206, held a hearing on appellant's motion to suppress his confession. He found that appellant knowingly, willfully and intelligently waived his right against self-incrimination and his right to counsel, denied the motion to suppress and thereafter submitted to the jury under cautionary instructions the question of the voluntariness of the confession.

Appellant testified that after being arrested and during the trip to the police station he was told that his statement would determine what would happen to him.

"* * * I talked to the detective.

Q What did he say?

A Well, I asked him was they going to keep me, and he said he didn't know for sure at all. Depends on my testimony.

Q All depends on your testimony?

A Statement.

Q Your statement?

A Yes."

Appellant denied that he told the police anything concerning the homicide at this time.

After appellant was taken to the police station he was placed in an interrogation room. There Police Officers Dudley Gibson and Bequette were told by appellant his version of what had occurred at the time of the homicide. Appellant testified in part concerning the giving of this oral statement as follows:

"Q And then what happened?

A They asked me did I want to tell them what happened?

Q What did you say?

A I said yes.

Q Now, Jessie, when you were first brought down there by the police, did you know why you were being brought down there by the police?

A For question. (sic)

Q And you were told that whether they would arrest you or not would depend on your statement, is that right?

A That is right."

As we understand this testimony appellant was told in effect that he would not be prosecuted if his story of the shooting was such that it exonerated him. Of course, he could not have been unaware that if his version was unsatisfactory he would be prosecuted. We find nothing unlawful in this respect if in fact appellant, prior to his statement, was otherwise fully advised of his constitutional rights to remain silent and have the assistance of counsel. There are always reasons which prompt a confession and they need not necessarily spring spontaneously from a suspect's own peculiar motives.

Officer Gibson testified that upon arriving at the main police station and prior to appellant's statement, Detective Bequette read to him his rights from a card furnished to all police. These rights were read into the records as follows:

"You have the right to remain silent.

Anything you say can be used against you in a court of law.

You have the right to the presence of an attorney to assist you prior to questioning and to be with you during questioning if you so desire.

If you cannot afford an attorney you have the right to have an attorney appointed for you prior to questioning.

Do you understand these rights?

Will you voluntarily answer any questions?"

There is also testimony that on the wall of the interrogation room there was a large sign upon which there was printed the same information. Officer Gibson testified that after these rights were read to appellant he stated he understood them and that he would voluntarily answer questions. Gib-

son testified, "After calling the [deputy county] attorney, and while Bequette and I were in the room with him, he expressed a desire and did voluntarily and unsolicited make a statement as to what happened."

After this, the officers left the appellant and shortly thereafter they returned, at which time he was once again apprised of his constitutional rights by a deputy county attorney and a statement was taken before a court reporter, the officers and a deputy county attorney. This statement was the one subsequently introduced at appellant's trial. In its part material to this appeal it reads:

"* * * Jessie, she will write down everything just exactly as it is said here. That's for your protection as well as ours. I am an attorney, and you understand I am a prosecuting attorney?
Answer: Yes.

Question: Now, I want to make clear before we do anything that you have certain rights. The officers have advised you of some of these rights, haven't they?
Answer: Yes.

Question: Now, do you understand, Jessie, you have a right to remain silent?
Answer: Yes.

Question: You don't have to say anything.
Answer: Yes.

Question: Anything you say may be used against you. Is that clear?
Answer: I don't understand.

Question: Anything you say may be used against you.
Answer: I understand.

Question: Now, do you understand you have a right to an attorney?
Answer: Yes.

Question: And that right applies to you right now.
Answer: Yes.

Question: And if you don't have enough money for one, one will be provided for you.

Answer: I understand.

Question: You understand that right?
Answer: Yes.

Question: Now, knowing these rights, Jessie, do you want to go ahead and tell us what happened?
Answer: Yes."

We think that there is ample support for the finding of the trial judge that appellant was fully advised of his constitutional rights.

It is argued, however, that he was subjected to psychological pressures against which he was no match; first, because he was not appropriately advised by the arresting officers concerning the reason for his being taken into custody. We find no merit to this argument. And second, psychological pressures are asserted by virtue of the fact that when appellant was brought to the police station he was taken to an interrogation room where he was left alone on three occasions for periods of time estimated as being between five and fifteen minutes and that it was between one hour and an hour and one-half before his confession was taken down by a reporter.

If there were psychological pressures arising out of these circumstances, we do not think they are such as constitutionally affect the voluntariness of the statement given to the deputy county attorney in the presence of the reporter.

In State v. Sanders, 101 Ariz. 410, 420 P.2d 281, this court held that the trial judge's determination will not be disturbed on appeal unless there is manifest error and in State v. Denton, 101 Ariz. 455, 420 P.2d 930, we held that if there is substantial evidence to support the trial court's determination of voluntariness, this court would uphold it. There is adequate evidence to sustain the trial judge's findings that the confession was voluntary in the sense that there were no unlawful psychological compulsions which would invalidate the confession. Its admission into evidence at the trial was, therefore, proper. cf.

State v. Reams, 104 Ariz. 472, 455 P.2d 446.

Judgment affirmed.

UDALL, C. J., LOCKWOOD, V. C. J., and McFARLAND and HAYS, JJ., concur.