554 P.2d 646

**STATE of Arizona, Appellee,**

v.

**Donald Vincent WILLIAMS, Appellant.**

**No. 1 CA–CR 1040.**

Court of Appeals of Arizona,
Division 1,
Department B.

July 22, 1976.

Rehearing Denied Aug. 20, 1976.

Petition for Review Denied Sept. 23, 1976.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, Chief Counsel, Crim. Div., Teresa S. Thayer, Asst. Atty. Gen., Phoenix, for appellee.

George M. Sterling, Jr., Phoenix, for appellant.

## OPINION

SCHROEDER, Judge.

This is an appeal from appellant's conviction of first degree rape. His conviction stemmed from an episode which additionally led to the conviction of two other men for sexual crimes. Their appeals are also decided this day. *State v. Smiley*, 27

Ariz.App. 314, 554 P.2d 910; *State v. Moore*, 27 Ariz.App. 275, 554 P.2d 642.[1]

The episode occurred in April of 1974 at an apartment complex in Tempe known as La Mancha, where appellant and other college students lived. On the evening in question, the prosecutrix, who was then 16 years old, had gone to the complex with two young female companions. After talking with the appellant and some other males outside the building, the three girls went to the appellant's room. According to the testimony of the prosecutrix, the girls went there to listen to records. The prosecutrix testified that after a few minutes, approximately ten males entered the room; she was forced onto the bed, held down, and raped successively by the males, some of whom she did not know. She identified Smiley as being either the first or second individual actually to rape her, and the appellant, Williams, as either the third or the fourth. She further described asking Williams for help, and testified that he had intercourse with her again after others had done so.

The evidence showed further that she and her friends had gone to La Mancha before in order to meet male athletes, that the prosecutrix had previously become acquainted with appellant, and that she had engaged in intercourse with another resident of La Mancha on at least one occasion.

Statements given to the police on the evening of the incident and the morning after by both appellant and Smiley were introduced through the testimony of police officers. The officers testified that the appellant maintained that the sex acts were all consensual. Smiley's version of the evening conflicted with this testimony in that he stated that the prosecutrix willingly engaged in sex with him, but was forced to have intercourse with the other individuals.

The numerous issues raised by appellant include the following:

1. Did the trial court err in permitting evidence that men other than the appellant and Smiley successively had sexual relations with the prosecutrix during the same evening in the same room?

2. Was the information upon which appellant was charged insufficient because the justice of the peace during the preliminary hearing restricted the defendant's cross-examination with respect to certain matters?

3. Should the information have been dismissed because it failed expressly to state that appellant and the prosecutrix were not married?

4. Did the trial court err in refusing to give an instruction that first degree rape requires specific intent?

5. Was the State required prior to the close of all evidence to elect between first and second degree rape?

6. Were the statements of appellant to the police after the incident the product of threats or promises by the police, rendering the statements involuntary and therefore inadmissible?

7. Did the admission of the statements of appellant's co-defendant, Smiley, which conflicted with appellant's own statements, require reversal under the United States Supreme Court decision in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)?

After review of the voluminous record in this case, we conclude that there was no reversible error in connection with the first six issues. However, we further conclude that the use of the prejudicial Smiley statements, in the absence of any opportunity to cross-examine Smiley, constituted a denial of defendant's fundamental right of confrontation, and requires reversal.

1. All three individuals were originally tried together. When that trial resulted in a hung jury with respect to the appellant and Smiley, they were retried and convicted. Appellant appeals from his conviction and sentence of five years to five years and one day.

Because the other issues raised by appellant, although not requiring reversal, may have some bearing in the event of a retrial, we discuss them first.

## I. ACTS OF OTHERS

Appellant claims it was error for the trial court to permit testimony relating to the sex acts of individuals other than the defendants on trial. He claims that such evidence of bad acts of others was irrelevant and highly prejudicial.

■ There is a large body of law concerning the admissibility of other separate criminal acts of a defendant himself. Such acts are generally admissible only in limited circumstances, such as to demonstrate a common purpose or plan, the identity of the defendant, motive, or absence of mistake. *See, e. g., Dorsey v. State,* 25 Ariz. 139, 213 P. 1011 (1923); *State v. Tuell,* 112 Ariz. 340, 541 P.2d 1142 (1975). In this case, it is not evidence of appellant's own acts which is questioned. It is the admissibility of the acts of others, in the same room, at the same time.

The trial court permitted the evidence in reliance on the decision of our Supreme Court in *State v. Evans,* 110 Ariz. 380, 519 P.2d 182 (1974). The court there held evidence of bad acts of others to be admissible for the purpose of telling the complete story of the crime:

> "The evidence of what occurred was admissible on the principle that the complete story of the crime may be shown even though there is revealed other such prejudicial facts as that another or other criminal offenses have been committed. [Citations omitted]." (110 Ariz. at 381, 519 P.2d at 183).

*See also People v. Piero,* 79 Cal.App. 357, 249 P. 541 (1926), and 42 Cal.Jur.2d § 77, 268 which supports specifically the admissibility of evidence showing successive rapes by others as corroborative of the testimony of the prosecutrix.

■ In the unusual circumstances of this case, the evidence of the acts of others showed the complete story; moreover, without such evidence, it is difficult to imagine how the events of that evening could have been presented to the jury coherently. Accordingly, we find no error in connection with the admission of the acts of others.

## II. RESTRICTED CROSS-EXAMINATION AT PRELIMINARY HEARING

The next issue concerns the conduct of the justice of the peace during the preliminary hearing. Prior to arraignment, the appellant sought a new preliminary hearing on the ground that the justice court had unduly restricted the scope of cross-examination of the prosecutrix. Appellant's counsel did cross-examine her at length during the preliminary hearing. However, as to certain matters, appellant's counsel was not permitted to ask questions which he would have liked to ask. The justice of the peace sustained objections on the ground that the questions did not relate to the issue of probable cause.

Appellant relies upon art. 2, § 30 of the Arizona Constitution which provides for a preliminary hearing, and upon Rule 5.3, Arizona Rules of Criminal Procedure, which states that, "All parties shall have the right to cross-examine the witnesses testifying personally against them." However, Rule 5.3(a) also provides that the magistrate in a preliminary hearing shall "admit only such evidence as is material to the question whether probable cause exists."

■ Appellant does not and cannot on the basis of this record maintain that he was denied the opportunity to produce evidence which would have negated probable cause. The most that can be said is that appellant was not able to use his cross-examination of the prosecutrix at the preliminary hearing for the purpose of discovery in certain areas. We reject the notion that due process requires that the defendant be given the opportunity for limitless cross-examination for discovery purposes at the preliminary hearing. *See State v. Miranda,*

104 Ariz. 174, 450 P.2d 364 (1969), cert. denied, 396 U.S. 868, 90 S.Ct. 140, 24 L.Ed.2d 122; *State v. Bojorquez,* 111 Ariz. 549, 535 P.2d 6 (1975).[2]

## III. SUFFICIENCY OF INFORMATION

■ Appellant next urges that the information should have been dismissed because it failed to state that the appellant and the prosecutrix were not married. Appellant relies on *Browning v. State,* 53 Ariz. 174, 87 P.2d 112 (1939), which held that the language in a particular information was sufficient to negative the spousal relationship. Implicit in the holding of *Browning* was the assumption that the information should expressly negative the spousal relationship. We believe that to the extent that *Browning* could be considered a holding of a statutory requirement to that effect, it has effectively been overruled by the Supreme Court's opinion in *State v. Lewis,* 107 Ariz. 163, 483 P.2d 1402 (1971), holding that absent a requirement in the Rules, the information need not contain such an allegation. Our Rules have no such requirement, and thus the information here was legally sufficient.

## IV. RAPE INSTRUCTION

■ Appellant next claims that it was error for the trial court to refuse to instruct the jury that the crime of first degree rape requires specific intent. Appellant cites *Daggs v. Territory,* 11 Ariz. 446, 94 P. 1106 (1908), in support of his position. But that case held only that specific intent is required to prove assault with intent to commit rape. While we are aware of no Arizona cases directly on point, the great weight of authority holds that the crime of rape is a general intent crime. *United States v. Thornton,* 162 U.S.App. D.C. 207, 498 F.2d 749, 753 (1974), and au-

thorities cited therein. The court's holding and discussion in *Thornton* is wholly consistent with *Daggs v. Territory, supra,* since *Thornton* held that while rape is a general intent crime, assault with intent to commit rape requires specific intent. California has also concluded that rape is not a specific intent crime. *See People v. Butcher,* 174 Cal.App.2d 722, 345 P.2d 127 (1959). We, therefore, hold that rape does not require an instruction on specific intent.

## V. ELECTION BETWEEN FIRST AND SECOND DEGREE RAPE

■ As a fifth issue, defendant argues that the State was required prior to the close of all evidence to elect between first and second degree rape. The appellant was originally charged with an open charge of rape. Repeatedly during trial, he requested to be informed whether he was charged with first degree or second degree rape. The trial court denied the requests, and at the close of all the evidence the State elected to charge the defendant with first degree rape. Appellant's contention is that the State, by refraining from an election until the last minute, denied appellant due process of law.

We are not persuaded that our law requires an election at any time. However, our resolution of the issue presented is controlled by *State v. Klem,* 108 Ariz. 349, 498 P.2d 216 (1972), in which the court upheld conviction of second degree rape even though the appellant had been charged with first degree rape. The court stated that first and second degree rape are two separate forms of the type of criminal act for which different penalties are to be assessed. The court said:

"While it is, of course, possible that an accused may be taken by surprise if

2. We recognize there is tension between the holding of those cases and the comment to Rule 5.3(a) which provides that the defendant may not depose any witness who has been examined at preliminary hearing because defendant is entitled to only one discovery opportunity for each witness. We are not

faced with resolving any conflict in this case, however, for this appellant has never claimed that he was denied other discovery opportunities, nor has he made any claim or showing that the limitation of cross-examination during the preliminary hearing resulted in any actual prejudice to his defense.

an information charges him under one subsection of A.R.S. § 13–611 and the proof offered brings the offense under another subsection, if the accused has received notice of such a possibility he is not prejudiced thereby." (108 Ariz. at 350, 498 P.2d at 217).

Here as in *Klem,* the appellant was not facing conviction of a crime of which he had no notice. He was, therefore, not denied due process of law. This Court is not in a position to follow appellant's urging that *Klem* be overruled. *McKay v. Industrial Commission,* 103 Ariz. 191, 438 P. 2d 757 (1968).

## VI. VOLUNTARINESS OF APPELLANT'S STATEMENTS

A major focus of the trial was upon the statements given by appellant and Smiley to the police the evening of the incident and the next morning. A voluntariness hearing was held with respect to these statements, and the trial court concluded that they were voluntary. On appeal, appellant asks this Court to declare as a matter of law that his statements were involuntary because they were given in reliance upon promises made by the police officers.

The appellant testified at the voluntariness hearing that the police indicated if his stories matched the stories of the other individuals involved, he would be charged with rape in the second degree and not with first degree rape. Appellant stated that on the basis of that discussion, he expected to be charged with second degree rape.

Officer Colombe of the Tempe Police Department testified that he may have told the appellant that once the police got the truth from everyone, it would make a difference between the charges of first and second degree rape. Appellant was advised of his right to remain silent prior to questioning.

■ If conflicting inferences might be drawn from the testimony of the appellant and the police officer, then their resolution is for the trial court as the trier of fact

and not for this Court. *State v. Brosie,* 24 Ariz.App. 517, 540 P.2d 136 (1975); *State v. Dean,* 8 Ariz.App. 508, 447 P.2d 890 (1968). An appellate court will not disturb a trial court's determination that a confession is voluntary unless the trial court's determination is clearly erroneous. *State v. Robinson,* 9 Ariz.App. 379, 452 P.2d 706 (1969).

■ In this case, the alleged promise made by the police amounts to no more than a statement that the appellant's answers might make a difference in the charge. This is not the sort of threat or promise which would automatically render the appellant's answers involuntary. *See State v. Patterson,* 105 Ariz. 16, 458 P.2d 950 (1969), in which our Supreme Court upheld the voluntariness of statements given after the defendant was told that his statement would determine whether he would be kept in prison. The court held that since the defendant "could not have been unaware that if his version was unsatisfactory he would be prosecuted," there was nothing unlawful in the questioning. The same rationale applies here. The circumstances in this case are wholly unlike those in *State v. Watson,* 82 N.M. 769, 487 P.2d 197 (1971), cited by appellant, where the officer told the defendant that if he talked he would be given immunity as a state witness.

We, therefore, conclude that the trial court committed no error in its determination that the statements given by the appellant were voluntary.

## VII. THE *BRUTON* ISSUE

We turn finally to appellant's contention that the trial court committed reversible error when it denied appellant's motion for severance, thereby permitting use of the damaging extrajudicial statements of a codefendant, Smiley, in appellant's trial.

Smiley's statements can be summarized as follows: Three girls, including the prosecutrix, went to appellant's room. The girls began talking about having an orgy, someone turned out the lights, and every-

one began to get undressed. One of the girls subsequently left the room, and another went into the bathroom. The prosecutrix, whom Smiley referred to as "Skinny Chris," remained in the room. · Smiley stated that she willingly had intercourse with him, but that when other males, who had entered the room, prepared to have sex with her, she became frightened and began screaming and fighting. Smiley stated that he and two others held her down, while five or six men had intercourse with her. After they were finished, she was permitted to get dressed and leave. The gist of Smiley's statements was, therefore, that "Skinny Chris" consented to intercourse with Smiley but resisted intercourse with others.

Smiley's statements conflicted materially with the statements of appellant Williams, who told police that "Skinny Chris" engaged willingly in sexual intercourse with all of the participants, including himself.

The prosecution during closing argument made repeated references to the Smiley statements, pointing out that they corroborated the testimony of the victim with respect to the use of force, at least in connection with the intercourse with men following Smiley. The prosecution also referred repeatedly to evidence that appellant was either the third or fourth man to have relations with the victim. The co-defendant Smiley did not take the stand, and there was, consequently, no opportunity to cross-examine him with respect to the statements attributed to him by the police officers in their testimony.

The appellant sought unsuccessfully prior to the first trial, and again by way of renewed motion prior to the second trial, to sever his trial from Smiley's. Appellant argued that police testimony with respect to the Smiley statements constituted prejudicial and inadmissible hearsay as to appellant. The trial court denied the motion, choosing instead simply to instruct the jury

on the limited use which could be made of the statements.[3]

In weighing the appellant's contention that the trial court's failure to sever the trials constituted reversible error, we must be guided by the decision of the United States Supreme Court in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L. Ed.2d 476 (1968), and its progeny. The *Bruton* decision was based upon the right of a defendant, guaranteed by the Sixth and Fourteenth Amendments, to cross-examine witnesses. *Bruton* thus held that, in a joint trial, where one defendant did not take the stand, the introduction of his extrajudicial confession which incriminated the second defendant, violated the second defendant's Sixth and Fourteenth Amendment rights, even though the jury was instructed that the confession was not to be considered against him.

 As subsequent cases illustrate, *Bruton* does not invalidate use of co-defendant statements in all joint trial situations. When, for example, the declarant co-defendant takes the stand and subjects himself to cross-examination, there is no infringement of any constitutional right to cross-examine. *Nelson v. O'Neil,* 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971). The *Bruton* rule cannot be invoked by a defendant who insists upon a joint trial, knowing that the prosecution intends to use codefendant's inculpatory statements. *United States v. Sullivan,* 435 F.2d 650 (9th Cir. 1970), cert. denied, 402 U.S. 912, 91 S.Ct. 1392, 28 L.Ed.2d 654. *See also* annot. at 29 L.Ed.2d 931, 990, § 8. If the inculpatory co-defendant's confession is admissible under an exception to the hearsay rule, as for example, an admission of a co-conspirator, the *Bruton* rule will not be invoked. *United States v. Kelley,* 526 F.2d 615, 620 (8th Cir. 1975). Also, where extrajudicial statements of both defendants interlock, and do not conflict on vital points, courts have held that no reversal is required.

3. The State incorrectly argues that the motion was not renewed. The transcript reflects that it was. Also, the transcript reflects that the appellant's counsel expressly relied upon *Bruton* in his request for severance.

*See, e.g., United States ex rel. Stanbridge v. Zelker,* 514 F.2d 45 (2d Cir. 1975).

None of those circumstances exist here. The co-defendant Smiley did not take the stand; the appellant made a timely pretrial motion for severance based upon the anticipated damaging use of the Smiley statements; the statement was not admissible against appellant under any recognized exception to the hearsay rule, and Smiley's statements conflicted materially with appellant's own extrajudicial account.

The State takes the position that the Smiley statements did not seriously tend to incriminate Williams. The State points out that although Smiley identified appellant's room as the scene of the crime, Smiley did not specifically identify Williams as one of the participants.

■ However, in the context of Williams' own statements and other evidence at trial, the inevitable effect of the Smiley statements, which described repeated forcible rapes by unnamed individuals, was to inculpate Williams. The situation is similar to cases in which the names of co-defendants have been removed from incriminating statements, a process known as redaction. So long as the jury is highly likely to infer that the defendant is a nameless individual incriminated by the statement, the defendant's rights are nevertheless violated. *Serio v. United States,* 131 U.S. App.D.C. 38, 401 F.2d 989 (1968); *see also* annot. 29 L.Ed.2d 991, § 9(a). Our Arizona Supreme Court has held that where the complaining defendant's name was deleted from the confession of a co-defendant, and "another Negro male" was substituted, reversal was required. *State v. Taylor,* 104 Ariz. 264, 451 P.2d 312 (1969). The court stated that, "even though reference was made to 'another Negro male', the jury read into those words the name of appellant." (104 Ariz. at 267, 451 P.2d at 315).

Here we can have no serious doubt that Smiley's statements, which described the victim undergoing forcible intercourse at the hands of successive unnamed individuals, incriminated the appellant, whom the prosecutor emphasized as having been the third or fourth in line. In addition, the only direct evidence implicating the appellant in the crime was the testimony of the victim, and as the prosecutor also emphasized, Smiley's statements were the most incriminating corroboration of her testimony. More than that, Smiley's statements did identify the room involved as being the appellant's, and that aspect of the statements alone is significant.

■ The Smiley statement, therefore, cannot be dismissed as cumulative evidence or otherwise harmless error. Contrast *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Olivas v. Eyman,* 104 Ariz. 163, 449 P.2d 942 (1969).

In short, the Smiley statements must be considered "powerfully incriminating," and we conclude that the following language of the Supreme Court in *Bruton* is controlling:

"Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others. The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed. *Pointer v. State of Texas,* supra [380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923]." (391 U.S. at 135, 88 S.Ct. at 1628).

We, therefore, hold that the use of the co-defendant Smiley's statements constituted reversible error, and the matter must be remanded for further proceedings. In

view of this disposition, it is not necessary for us to reach the other questions raised by appellant.

Reversed and remanded.

JACOBSON, P. J., and WREN, J., concur.