Filed 2/19/25  P. v. Burns CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL BURNS,<br><br>    Defendant and Appellant. | A166535<br><br><br>(Contra Costa County<br>Super. Ct. No. 022200401) |

The trial court found Michael Burns incompetent to stand trial and subject to involuntary administration of antipsychotic medication in special proceedings under Penal Code sections 1367 et seq. and 2603.[1]  On appeal, Burns argues that the trial court abused its discretion when it denied his motion to replace his counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) and that his counsel's conduct violated his state and federal constitutional right to counsel.  We affirm.

## BACKGROUND

On June 20, 2022, Burns was charged with felony resisting an officer (§ 69; count 1); felony attempted removal of a firearm from a peace officer (§ 148, subd. (d); count 2); misdemeanor resisting, obstructing, or delaying a peace officer or an emergency medical technician (§ 148, subd. (a)(1); count 3);

---

[1] Undesignated statutory references are to the Penal Code.

1

misdemeanor carrying a switchblade knife (§ 21510, subd. (b); count 4); and two misdemeanor counts of elder or dependent elder abuse (§ 368, subd. (c); counts 5, 6). The following day, Burns refused to appear at his arraignment. Despite Burns's failure to appear, his initial public defender expressed a doubt as to his competency to stand trial and the trial court accepted. The court suspended criminal proceedings and transferred the case to another department for appointment of doctors and further proceedings.

On June 23, the trial court appointed another attorney from the Contra Costa Public Defenders, a mental health public defender, to represent Burns in the involuntary medication and competency proceedings.

On June 29, the trial court set a competency hearing date for August 10 and appointed three doctors to evaluate Burns's competency to stand trial: Dr. Kaur, Dr. Siggins, and Dr. Griffith.

On July 31, Dr. Kaur attempted to examine Burns during an in-person visit, but Burns refused to meet with her. In her report, dated August 8, Dr. Kaur stated that she could not offer a conclusive determination of Burns's competency due to his refusal to be examined but opined it was "likely that he is unfit to proceed given his recent mental state, as reported/documented by collateral sources of information."

Dr. Kaur's report included a section of behavioral observations based on a call initiated by Burns's mental health counsel, who provided the following information about him. The attorney informed Dr. Kaur that Burns was her client eight to nine years before, in a misdemeanor driving under the influence case, and she was on the fence about declaring doubt as to his competency then. She suspected Burns was mentally ill due to a " 'budding persecutory complex,' " a manic presentation, and constant paranoid beliefs. Burns recognized her when she began representing him in the current case

2

and initially declined to meet with her and requested a new lawyer. As they kept working together, Burns discussed aspects of his previous case as if it were current, making it impossible to hold a conversation with him because he talked " 'at' " her and left her few opportunities to interject. Additionally, Burns left her long, rambling voicemails about paranoid and persecutory beliefs, such as " 'MK ultra' being used on him by the government"; being framed by the government in a conspiracy; invisible hands around his neck in his booking photo; and his mother and father's being " 'hooked up to his head, and threatening to kill him.' " Counsel expressed concern that Burns could not adequately assist in his defense because of the above noted symptoms.

Dr. Kaur also reviewed Burns's hospital records and police reports. Based on those records, Dr. Kaur noted that Burns had evidenced disorganized and delusional beliefs within the prior six months, including the following bizarre statements during an evaluation dated March 10, 2022: " 'I am suing the military. All of this medical bullshit that they have conjured up is to try to cover up the voice of skull stuff. . . . I dont [*sic*] have any type of mental issues.' " " 'The government owes me money they stole my intellectual property.' " " 'I saw 5000 people get killed the other night, interdimensionally. The army stalks my parents' house. It may sounds crazy . . . I can see in to other dimensions.' " (*Sic.*) During his current incarceration, Burns continued to display disorganized and prominent delusional beliefs, stating: " 'I have Department of Justice security clearance. I have Interpol Security Clearance. I have tried to tell you about these inter-dimensional invisibles. It has to do with the special forces . . . I'm above the law. I'm protected by assassins. I'm the most highly protected man in the universe.' " " 'I'm gonna live eternally. I'm God.' "

Dr. Siggins was scheduled to meet with Burns on August 2, but Burns failed to attend the appointment. Based on his review of the trial court's order and 200 pages of Burns's mental health records, Dr. Siggins, in his report dated August 2, opined that Burns was not competent to stand trial.

On August 8, Dr. Griffith met with and examined Burns. In her report, dated August 9, Dr. Griffith stated: "[Burns] immediately began yelling that he did not have to talk to me and did not need to be examined. He demanded to know my name, date of birth, social security number, and address. His speech was loud and pressured. He yelled various delusional ideas, that I was a terrorist, that everyone were [*sic*] terrorists, and that he had restraining orders against my family, the federal government, military, Interpol. He expressed grandiose delusions about being the most powerful man in the universe. He stated that he did not have to show for court. He read from a stack of detention slips and papers that he claimed to show that he was above the law. I terminated the interview as he continued to yell nonsensically." In preparation for her report, Dr. Griffith also reviewed the felony complaint; her previous evaluation of Burns from May 30, 2020; and his medical records from Contra Costa Regional Medical Center.

On August 10, the trial court held a section 1368 competency hearing. Burns again refused to appear at the hearing. Counsel for Burns stated that given Burns's refusal to come to appear at the hearing and to meet with the doctors, she believed it was important to go forward with submission in his absence. The parties stipulated to submit the issue of Burns's competency to stand trial based on the reports of the three doctors, and the court found Burns incompetent to stand trial by a preponderance of the evidence. The court referred the case to the Contra Costa County Conditional Release Program (CONREP) for a recommendation of Burns's placement.

4

On August 30, county counsel filed an application under section 2603 for authority to involuntarily administer medication to Burns.

On September 6, the trial court committed Burns to the State Department of State Hospitals for a maximum of two years for competency restoration treatment based on the placement evaluation and recommendation by CONREP. Again, Burns refused to appear at the hearing. The court asked Burns's counsel whether her client would consent to medication. Since counsel could not give an answer at that time, the court found that Burns did not consent to medication.

On September 30, the trial court held a contested section 2603 hearing for an order authorizing involuntary treatment with psychotropic medication. After testimony from three witnesses, the court granted the involuntary medication application.

Immediately after the section 2603 application was granted, Burns requested to replace his counsel and the trial court held a *Marsden* hearing. During the *Marsden* hearing, Burns stated he did not agree with his counsel's trial strategy. He also asserted that he was unable to meet with her before the involuntary medication hearing and generally had a hard time reaching her by phone or meeting with her in person. Additionally, Burns stated that he wanted a male attorney because he had "trust issues with females."

During the *Marsden* hearing, Burns's counsel explained that she met with him once and attempted to meet with him other times but was unable to because it was difficult to access his "module." She also noted that she received six voicemails from Burns the day before the hearing and offered to visit him again. The court inquired multiple times about specific issues that Burns was having with his counsel, explaining that he needed appropriate legal grounds for a replacement. The trial court denied the motion, finding

5

there was not a "sufficient basis to remove her" as she was "doing what she should be doing" by communicating and meeting with Burns at that moment.

## DISCUSSION

### I. *Marsden Motion*

Burns argues the trial court abused its discretion in denying his *Marsden* motion, after his section 2603 motion, based on his counsel's disclosure of privileged and confidential information to one of the court-appointed doctors. According to Burns, the court was obligated to inquire further into any potential conflict of interest based on Dr. Kaur's inclusion of counsel's statement in her section 1368 report. We disagree.

"We review the denial of a *Marsden* motion for abuse of discretion. [Citation.] Denial is not an abuse of discretion 'unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel.' " (*People v. Taylor* (2010) 48 Cal.4th 574, 599.) When the trial court fails to allow the defendant to state his or her reasons for a request, however, the "usual case" requires reversal because an inadequate record denies meaningful appellate review. (*People v. Lopez* (2008) 168 Cal.App.4th 801, 814–815.)

"Under both the Sixth Amendment to the United States Constitution as applied to the states through the due process clause of the Fourteenth Amendment [citations] and article I, section 15 of the California Constitution [citations], a defendant in a criminal case has a right to the assistance of counsel. [¶] The constitutional guaranty 'entitles the defendant not to some bare assistance but rather to *effective* assistance.' [Citations.] [¶] Included in the right to effective assistance of counsel is 'a correlative right to representation that is free from conflicts of interest.' " (*People v. Bonin* (1989) 47 Cal.3d 808, 833–834 (*Bonin*).)

6

To safeguard this right, a defendant represented by an appointed attorney may request that the court discharge the attorney and substitute new counsel on the basis that the defendant's right to counsel would be substantially impaired by continuing with the original attorney. (*Marsden, supra*, 2 Cal.3d at p. 123; *People v. Smith* (1993) 6 Cal.4th 684, 694; see *People v. Martinez* (2009) 47 Cal.4th 399, 419 [*Marsden* was intended to provide protection to the right to counsel].) This request may be made at any stage in the criminal proceedings—including during competency proceedings—and the court must promptly conduct a *Marsden* hearing. (*People v. Sanchez* (2011) 53 Cal.4th 80, 89; *People v. Solorzano* (2005) 126 Cal.App.4th 1063, 1069.)

"When a defendant seeks substitution of appointed counsel pursuant to [*Marsden*], 'the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.' " (*People v. Taylor, supra*, 48 Cal.4th at p. 599.)

Here, the trial court conducted a *Marsden* hearing and allowed Burns to explain the basis of his contention and relate specific instances of inadequate performance. Burns fully expressed his dissatisfaction with counsel, from his disagreement with her trial strategy and the lack of communication to his discomfort with women in general. The court asked Burns multiple times if there were any other reasons he was dissatisfied with counsel. No more is required under *Marsden*.

7

Burns suggests the trial court had a duty to inquire into the potential conflict of interest caused by counsel's conversation with Dr. Kaur, relying heavily on *Bonin, supra*, 47 Cal.3d 808.

In *Bonin*, the defendant in a multiple murder action moved to substitute his counsel on the day trial was scheduled to begin. (*Bonin, supra*, 47 Cal.3d at pp. 820, 825.) The prosecution opposed the motion based on, among other things, a potential conflict of interest on behalf of the substitute counsel, who had possibly represented a key prosecution witness. (*Id.* at p. 825.) The parties disagreed on whether substitute counsel developed an attorney–client relationship or communicated significant information with the witness. (*Id.* at p. 827.) It was "plain," however, that the witness sought professional services from substitute counsel and they communicated about the matter of representation and the facts of the case to some extent. (*Ibid.*)

The *Bonin* court identified "certain essentially prophylactic rules" which "safeguard a criminal defendant's constitutional right to the assistance of conflict-free counsel . . . ." (*Bonin, supra*, 47 Cal.3d at p. 836.) Particularly, a trial court is required to inquire into the possibility of a conflict of interest on the part of defense counsel when it knows or reasonably should know of a potential conflict. (*Ibid.*) A trial court "can be held to have knowledge or notice of the possibility of a conflict only when . . . it is provided with *evidence* of the existence of a conflict situation . . . ." (*Id.* at p. 838.) "When in violation of its duty the trial court fails to inquire into the possibility of a conflict of interest or fails to adequately act in response to what its inquiry discovers, it commits error . . . ." (*Id.* at p. 837.) To obtain reversal, the defendant "must show that an actual conflict existed and that that conflict adversely affected counsel's performance." (*Ibid.*) There, the court found the prosecution's conflict of interest objection "triggered the

8

court's duty to inquire into the possibility of a conflict" but held reversal was not required because there was no adverse effect on substitute counsel's performance. (*Id*. at pp. 840, 843.)

Burns's reliance on *Bonin* is inapposite because he failed to articulate any potential conflict of interest on behalf of his counsel as the basis for granting his *Marsden* motion. Here, unlike *Bonin*, Burns never provided the trial court with evidence of the existence of a possible conflict of interest as part of his *Marsden* motion. On multiple occasions, the trial court asked Burns to explain his dissatisfaction with counsel but never discussed her potential conflict of interest based on her communications with Dr. Kaur.

Contrary to Burns's argument, the trial court's receipt of Dr. Kaur's report at the competency hearing did not trigger a duty to inquire into a possible conflict several weeks later when Burns sought to replace his counsel during or after an involuntary medication hearing. Dr. Kaur's report was considered by the court on August 10, 2022, as part of Burns's competency hearing. The *Marsden* hearing did not occur until September 30, more than a month and a half later, during the involuntary medication hearing. The issue of competency—to which Dr. Kaur's report was relevant—was no longer before the court. The court cannot reasonably be expected, upon a request to substitute counsel, to independently recall and raise a potential conflict of interest based on a report that was before the court over a month before. Thus, the court did not have, nor reasonably should have had, knowledge or notice of a potential conflict of interest to trigger the court's duty to inquire.

## II.   *Constitutional Claims*

Additionally, Burns argues that even outside the *Marsden* setting, the disclosure of confidential information created an actual conflict which would

9

undermine counsel's loyalty to Burns in violation of his state and federal right to counsel.[2]

"The constitutional guarantee of due process forbids a court from trying or convicting a criminal defendant who is mentally incompetent to stand trial. (*People v. Mickel* (2016) 2 Cal.5th 181, 194 [citations]; U.S. Const., 14th Amend.; Cal. Const., art. I, §§ 7, 15.) Section 1367 of the Penal Code, incorporating the applicable constitutional standard, specifies that a person is incompetent to stand trial 'if, as a result of mental disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner.' (*Id.*, subd. (a); see *Dusky v. U.S.* (1960) 362 U.S. 402 [4 L.Ed.2d 824, 80 S.Ct. 788] [competence requires ' "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" ' and ' "a rational as well as factual understanding of the proceedings against him" '].)" (*People v. Rodas* (2018) 6 Cal.5th 219, 230–231.) "The sole purpose of competency proceedings is to protect the accused." (*People v. Jernigan* (2003) 110 Cal.App.4th 131, 136 (*Jernigan*).)

A section 1368 hearing, in which a judge asks the defense attorney whether the defendant is mentally incompetent, does not violate attorney–client privilege because the statute does not require disclosure of confidential communication. (*People v. Bolden* (1979) 99 Cal.App.3d 375, 378 (*Bolden*).) Particularly, an attorney's observations of the client are not always privileged, and giving an opinion of the client's competency does not reveal

---

[2] The People argue Burns's evidentiary privilege claim has been forfeited because he failed to make a timely and specific objection to the inclusion of counsel's statements in Dr. Kaur's report. We exercise our authority to reach this issue. (*People v. Williams* (1998) 17 Cal.4th 148, 161–162, fn. 6.)

any protected information.  (*Ibid*.)  Additionally, when defense counsel and the defendant have opposite positions in a competency proceeding, it does not cause a conflict bearing upon counsel's ability to represent defendant. (*Jernigan, supra*, 110 Cal.App.4th at pp. 136–137 ["Counsel's interest in seeking to prove that defendant is incompetent is presumably based upon her judgment that it is in his best interest to do so. . . .  Thus, although there is a conflict between client and counsel as to how to proceed, there is no actual conflict affecting counsel's ability to advocate for her client's best interests"].)

"The determination of the defendant's competence to stand trial goes to the fundamental integrity of the court's proceedings; and once the court declares a doubt exists, a section 1368 hearing must be held and defendant may not waive a hearing.  [Citation.]  Often knowledge of facts calling into question defendant's competence are exclusively within the defense counsel's knowledge.  [Citation.]  If counsel were compelled to accede to defendant's desire not to initiate section 1368 proceedings, even though counsel has a bona fide doubt as to the defendant's competence, the court might never be informed that the defendant's competence is in issue, and the result could be that the defendant's due process rights are violated [citation].  Defense counsel's ultimate responsibility to his client is to ensure that those due process rights are not violated." (*People v. Harris* (1993) 14 Cal.App.4th 984, 994–995.)

Here, counsel's conversation with Dr. Kaur did not create a conflict of interest or violate Burns's constitutional right to effective representation. Counsel had essential knowledge of Burns's capacity to assist her "in the conduct of a defense in a rational manner." (§ 1367, subd. (a).)  Such information was "exclusively within the defense counsel's knowledge," and Burns's capacity went to the "fundamental integrity of the court's

11

proceedings." (*People v. Harris, supra*, 14 Cal.App.4th at p. 994.) Counsel's decision to share her opinion of Burns's paranoid and persecutory beliefs and her observations of Burns based on her past and current representation to show that he was incompetent to stand trial were "in his best interest" and therefore did not create a "conflict affecting counsel's ability to advocate for her client's best interests . . . ." (*Jernigan, supra*, 110 Cal.App.4th at p. 136; see *People v. Harris*, at p. 995; *Bolden, supra*, 99 Cal.App.3d at p. 380.)

This is particularly so because an incompetent defendant "is not capable of acting in his or her best interest . . . ." (*T.M. v. Superior Court* (2024) 104 Cal.App.5th 664, 685 (*T.M.*).) Thus, if defense counsel " ' "doubts the present [competency] of his [or her] client, he [or she] may assume his [or her] client cannot act in his own best interests and may act even contrary to the express desires of his [or her] client . . . ." ' " (*People v. Masterson* (1994) 8 Cal.4th 965, 971.) "Whether or not the client objects, counsel must be allowed to do what counsel believes is best in determining the client's competence" (*id.* at p. 973)—including making decisions about "how the proceedings should be conducted" (*People v. Hill* (1967) 67 Cal.2d 105, 115, fn. 4). Courts have therefore held that defense counsel in a competency hearing may waive, over his or her client's objections, his or her client's "rights to a jury trial, to present oral testimony and to confront and cross-examine witnesses." (*Masterson*, at p. 972.)

And because "[d]efense counsel's ultimate responsibility to his [or her] client is to ensure that [the client's] due process rights are not violated" (*People v. Harris, supra*, 14 Cal.App.4th at p. 995), counsel has a duty to ensure that the expert evaluators have all the relevant information they need to determine whether the client is competent to stand trial (see *T.M., supra*, 104 Cal.App.5th at p. 685 ["there is a strong public policy interest in ensuring

that courts have access to *all* information relevant to the competency determination"]).  Indeed, counsel acts "irresponsibly" if he or she leaves "to defendant the task of deciding which information the psychiatrists should review in preparation for the competence hearing."  (*People v. Samuel* (1981) 29 Cal.3d 489, 496.)  Courts have therefore held that defense counsel may furnish an illegally obtained confession to an expert evaluator "who considers that confession in forming an opinion of the defendant's mental condition." (*Id.* at p. 495.)  And when, as here, defense counsel has only provided information to the expert evaluator that is " 'directly relevant to' the competency evaluation" (*T.M.*, at p. 686), counsel has not violated his or her client's constitutional right to counsel (see *People v. Harris*, at p. 994 ["defense counsel does not provide ineffective assistance of counsel . . . by seeking to prove the defendant's incompetence over the defendant's objections"]).[3]

Burns suggests that counsel's statements made to Dr. Kaur and memorialized in Dr. Kaur's report are equivalent to counsel's making the statements in open court.  However, a document submitted by a court-appointed psychiatrist during a competency proceeding is presumptively confidential.  (Pen. Code, § 1369.5, subd. (a).)  Additionally, a statement made "in confidence of a communication that is protected" by the attorney–client privilege does not waive the privilege when its disclosure is "reasonably necessary for the accomplishment of the purpose for which the lawyer . . . was consulted . . . ."  (Evid. Code, § 912, subd. (d).)  Here, counsel was consulted to assist Burns and protect his interests, including making sure his due process

___

[3] "Confidential communication between a defendant and his lawyer is itself not a separate 'right' that the federal constitution guarantees, but rather an aspect of ensuring fulfillment of the right to assistance of counsel." (*People v. Alexander* (2010) 49 Cal.4th 846, 887–888.)

13

rights are not violated. The disclosure of Burns's communications to counsel regarding his paranoid and persecutory beliefs was reasonably necessary to ensure his due process rights were not violated, and the disclosure was made in confidence to a court-appointed psychologist whose reports are presumptively confidential.

Lastly, even if counsel's disclosures to Dr. Kaur were improper, Burns cannot establish the prejudice necessary for a Sixth Amendment violation. (See *People v. Turner* (2004) 34 Cal.4th 406, 427 [counsel's failure to object to improper evidence in competency hearing was not prejudicial when three experts independently arrived at the same conclusion].) In *Bolden, supra*, 99 Cal.App.3d 375, the defendant argued that the court-appointed psychiatrist improperly based his competency opinion on specific communications with the defendant's prior counsel. (*Id.* at p. 379.) The psychiatrist testified that defendant's former counsel revealed defendant's belief that the aliens inhabiting his father's body were from outer space. (*Ibid.*) The court, assuming defendant's former counsel revealed privileged information to the psychiatrist, found no prejudice to defendant where he also told the psychiatrists, and testified in court, that alien imposters had taken over the bodies of his family and others. (*Ibid.*)

Here, as in *Bolden*, Burns cannot show he was prejudiced by counsel's disclosure because the record is replete with additional examples of Burns's mental illness. For example, Burns's medical records, which were reviewed by all three doctors, also showed that he had a history of grandiose and persecutory beliefs along with auditory hallucinations. Additionally, Burns personally shared many similar paranoid and persecutory beliefs directly with Dr. Griffith, the only psychiatrist who met with him. Based on this information, Dr. Griffith and Dr. Siggins each independently arrived at the

14

opinion that Burns was mentally incompetent without relying on any of the information provided to Dr. Kaur by counsel.  On this record, Burns cannot show prejudice.

## DISPOSITION

The order is affirmed.


Jackson, P. J.


WE CONCUR:

Burns, J.
Chou, J.